1  Tionna Dolin (SBN 299010)
   Email: tdolin@slpattorney.com
2  **Strategic Legal Practices, APC**
3  1840 Century Park East, Suite 430
   Los Angeles, CA 90067
4  Telephone: (310) 929-4900
   Facsimile: (310) 943-3838
5  emailservices@slpattorney.com
6

7  Attorneys for Plaintiff,
   JOSE OLGUIN JR.
8

9

10              **UNITED STATES DISTRICT COURT**

11              **EASTERN DISTRICT OF CALIFORNIA**

12

13  JOSE OLGUIN JR.,                          Case No.:

14          Plaintiff,                        Assigned to:
                                              Dept.
15      vs.
                                              **COMPLAINT FOR VIOLATION**
16                                            **OF STATUTORY OBLIGATIONS**
    FCA US LLC; and DOES 1 through 10,
17  inclusive,

18                                            **JURY TRIAL DEMANDED**
            Defendants.
19

20

21

22

23

24

25

26

27

28

_Strategic Legal Practices, APC_
1840 Century Park East, Suite 430, Los Angeles, CA 90067

---

**COMPLAINT; JURY TRIAL DEMANDED**

Plaintiff alleges as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 because the action alleges claims pursuant to 15 U.S.C. §2310, the Magnuson-Moss Warranty Act, with a claim that exceeds the amount in controversy of $50,000, pursuant to 15 U.S.C. §2310(d)(3)(B).

2. Furthermore, the Court has jurisdiction over this matter because there is minimal diversity as Plaintiff and Defendants are citizens of different states, with a claim that exceeds the amount in controversy of $75,000, pursuant to 28 U.S.C. § 1332.

3. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the Eastern District of California because a substantial part of the events or omissions giving rise to the claim occurred within the judicial district, including entering into the warranty contract for the Subject Vehicle giving rise to this lawsuit.

**GENERAL ALLEGATIONS**

4. As used in this Complaint, the word "Plaintiff" shall refer to Plaintiff JOSE OLGUIN JR.

5. Plaintiff is a resident of Kern County, California.

6. As used in this Complaint, the word "Defendant" shall refer to all Defendants named in this Complaint.

7. Defendant FCA US LLC ("Defendant FCA") is a corporation organized and in existence under the laws of the State of Delaware and registered with the California Department of Corporations to conduct business in California. Defendant FCA's principal place of business is in the State of Michigan. At all times relevant herein, Defendant was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components in Kern County, California.

8.     Plaintiff is ignorant of the true names and capacities of the Defendants sued under the fictitious names DOES 1 to 10. They are sued pursuant to Code of Civil Procedure section 474.  When Plaintiff become aware of the true names and capacities of the Defendants sued as DOES 1 to 10, Plaintiff will amend this Complaint to state their true names and capacities.

## TOLLING OF THE STATUTES OF LIMITATION

9.     To the extent there are any statutes of limitation applicable to Plaintiff's claims—including, without limitation, the Song-Beverly Consumer Warranty Act, implied warranty, Magnuson-Moss Act, and fraudulent inducement by concealment—the running of the limitation periods have been tolled by, inter alia, the following doctrines or rules: equitable tolling, the discovery rule, the fraudulent concealment rules, equitable estoppel, the repair rule, and/or class action tolling, arising from the pendency of *Alfonso and Arlene Moran et al. v. FCA US LLC*, Case No. 3:17-02594-GPC (the *Moran* Class Action), currently pending in the United States District Court for the Southern District of California; the *Moran* Class Action was previously known as Ryan and *Sarah Wildin et al. v. FCA US LLC*, Case No. 3:17-02594-GPC-MDD. (e.g., the American Pipe rule).

10.     Plaintiff discovered Defendant's wrongful conduct alleged herein shortly before the filing of the complaint, when Plaintiff requested a buyback and/or restitution of the Subject Vehicle from Defendant FCA, as the Vehicle continued to exhibit symptoms of defects following Defendant FCA's unsuccessful attempts to repair them. However, Defendant FCA failed to provide restitution pursuant to the Song-Beverly Consumer Warranty Act and/or Magnuson-Moss Warranty Act.

## FACTUAL BACKGROUND

11.     On or about December 21, 2018, in California, Plaintiff's predecessors in interest (deceased) entered into a warranty contract with Defendant FCA regarding a 2018 Chrysler Pacifica vehicle identification number 2C4RC1AG3JR122522 (hereafter the "Vehicle"), which was manufactured and/or

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

distributed by Defendant FCA.

12.    The warranty contract contained various warranties, including but not limited to the bumper-bumper warranty, powertrain warranty, emission warranty, etc. A true and correct copy of the warranty contract is attached hereto as **Exhibit A**. The terms of the express warranty are described in **Exhibit A** and are incorporated herein. In addition, to the these warranties, Defendant FCA also provided Plaintiff with a California Emission Warranty, which Plaintiff request Defendant FCA produce as part of its discovery obligations in this case.[1]

13.    Pursuant to the Song-Beverly Consumer Warranty Act (the "Song-Beverly Act") Civil Code sections 1790 et seq. the Subject Vehicle constitutes "consumer goods" used primarily for family or household purposes, and Plaintiff has used the vehicle primarily for those purposes. Plaintiff is "buyers" of consumer goods under the Act. Defendant FCA is a "manufacturer" and/or "distributor" under the Song-Beverly Act.

14.    Plaintiff justifiably revokes acceptance of the Subject Vehicle under Civil Code, section 1794, et seq. by filing this Complaint and/or did so prior to filing the instant Complaint.

15.    These causes of action arise out of the warranty obligations of Defendant FCA in connection with a motor vehicle for which Defendant FCA issued a written warranty.

16.    Defects and nonconformities to warranty manifested themselves within the applicable express warranty period, including but not limited to the Vehicle's transmission; engine; defects causing stalling, among other defects and non-conformities.

---

[1] Upon information and belief, Defendant FCA deliberately refuses to include the terms of the California emissions warranties in its main express warranty booklet so that California consumers are kept in the dark when Defendant FCA fails to comply with its warranty obligations under California's 7 years/70,000 miles emissions warranty, or other California emission warranties, including but not limited to, Low Emission Vehicles warranties (which have an even longer warranty term).

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430 LOS ANGELES, CA 90067

17.     Said defects/nonconformities substantially impair the use, value, or safety of the Vehicle.

### Some Of Plaintiff's Vehicle's Repair History

18.     The following is a brief summary of some portions of the Subject Vehicle's repair history.

19.     On or about December 27, 2019, with approximately 13,766 miles on odometer, the Subject Vehicle was presented to Defendant's authorized repair facility due to various concerns including jerking. In connection with the concerns, Defendant's authorized repair facility performed warranty repairs.

20.     On or about June 30, 2020, with approximately 22,480 miles on odometer, the Subject Vehicle was presented to Defendant's authorized repair facility due to various concerns including jerking and acceleration issues. In connection with the concerns, Defendant's authorized repair facility performed warranty repairs.

21.     On or about January 18, 2021, with approximately 33,434 miles on odometer, the Subject Vehicle was presented to Defendant's authorized repair facility due to various concerns including ongoing jerking and acceleration issues. In connection with the concerns, Defendant's authorized repair facility performed warranty repairs.

22.     Thereafter, Plaintiff continued to experience symptoms of the Subject Vehicle's defects despite Defendant's representations that the Subject Vehicle was repaired.

23.     Under the Song-Beverly Act, Defendant FCA had an affirmative duty to promptly offer to repurchase or replace the Subject Vehicle at the time if failed to conform the Subject Vehicle to the terms of the express warranty after a reasonable number of repair attempts.[2]

---

[2] "A manufacturer's duty to repurchase a vehicle does not depend on a consumer's request, but instead arises as soon as the manufacturer fails to comply with the warranty within a reasonable time. (*Krotin v. Porsche Cars North America, Inc.* (1995) 38 Cal.App.4th 294, 301-302, 45 Cal.Rptr.2d 10.) Chrysler

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

24.    Defendant FCA has failed to either promptly replace the Subject Vehicle or to promptly make restitution in accordance with the Song-Beverly Act.

25.    Under the Song-Beverly Act, Plaintiff is entitled to reimbursement of the price paid for the vehicle less that amount directly attributable to use by the Plaintiff prior to the first presentation to an authorized repair facility for a nonconformity.

26.    Plaintiff is entitled to replacement or reimbursement pursuant to Civil Code, section 1794, et seq. Plaintiff is entitled to rescission of the contract pursuant to Civil Code, section 1794, et seq. and Commercial Code, section 2711.

27.    Plaintiff is entitled to recover any "cover" damages under Commercial Code, sections 2711, 2712, and Civil Code, section 1794, et seq.

28.    Plaintiff is entitled to recover all incidental and consequential damages pursuant to 1794 et seq. and Commercial Code, sections 2711, 2712, and 2713 et seq.

29.    Plaintiff suffered damages in a sum to be proven at trial in an amount that exceeds $75,000.00.

30.    Plaintiff is entitled to all incidental, consequential, and general damages resulting from Defendants' failure to comply with its obligations under the Song-Beverly Act and/or Magnuson-Moss Warranty Act.

31.    Plaintiff purchased the Subject Vehicle as manufactured with FCA's

---

performed the bridge operation on Santana's vehicle in August 2014 with 30,262 miles on the odometer—within the three-year, 36,000 mile warranty. The internal e-mails demonstrating Chrysler's awareness of the safety risks inherent in the bridge operation were sent in September 2013, and thus Chrysler was well aware of the problem when it performed the bridge operation on Santana's vehicle. Thus, Chrysler's duty to repurchase or provide restitution arose prior to the expiration of the three-year, 36,000 mile warranty. Moreover, although we do not have the actual five-year, 100,000 mile power train warranty in our record, Santana's expert testified that the no-start/stalling issues Santana experienced were within the scope of the power train warranty, which was still active when Santana requested repurchase in approximately January 2016, at 44,467 miles. Thus the premise of Chrysler's argument—that Santana's request for repurchase was outside the relevant warranty—is not only irrelevant, but wrong." *Santana v. FCA US LLC,* 56 Cal. App. 5th 334, 270 Cal. Rptr. 3d 335 (2020).

defective 9HP transmission and PCM.

32.    Plaintiff is informed, believes, and thereon alleges that FCA knew since prior to Plaintiff purchasing the Subject Vehicle, that the 2018 Chrysler Pacifica vehicles equipped with a 9HP transmission are defective along with the Powertrain Control Module (PCM), including Plaintiff's 2018 Chrysler Pacifica, contained one or more defect(s) to the transmission and/or PCM which may result in stalling, shutting off, and/or loss of power, (the "Stalling Defect").

33.    Thus, the Stalling Defect is a safety concern because it severely affects the driver's ability to control the car's speed, acceleration, and deceleration. For example, these conditions make it difficult to safely merge into traffic or may cause a sudden loss of power while in motion. Even more troubling, the Stalling Defect can cause the vehicle to fail without warning, while the Vehicle is moving at highway speeds.

34.    Plaintiff is informed, believes, and thereon alleges that prior to Plaintiff acquiring the Vehicle, FCA was well aware and knew that the PCM installed in the Vehicle was defective but failed to disclose this fact to Plaintiff at the time of sale and thereafter.

35.    Plaintiff is informed, believe, and thereon allege that FCA acquired its knowledge of the Stalling Defect prior to Plaintiff acquiring the Vehicle, through sources not available to consumers such as Plaintiff, including but not limited to pre-production and post-production testing data; early consumer complaints about the Stalling Defect made directly to FCA and its network of dealers; aggregate warranty data compiled from FCA's network of dealers; testing conducted by FCA in response to these complaints; as well as warranty repair and part replacements data received by FCA from FCA's network of dealers, amongst other sources of internal information.

36.    Plaintiff is informed, believes, and thereon alleges that while FCA knew about the Stalling Defect, and its safety risks since prior to Plaintiff

**COMPLAINT; JURY TRIAL DEMANDED**

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

purchasing the Subject Vehicle, FCA nevertheless concealed and failed to disclose the defective nature of the Vehicle and its Stalling Defect to its sales representatives and Plaintiff at the time of sale and thereafter. FCA omitted mention of the Stalling Defect to its consumers.

37.    Plaintiff is a reasonable consumer who interacted with sales representatives, considered FCA's advertisement, and/or other marketing materials concerning the FCA Vehicles prior to purchasing the Subject Vehicle. Had FCA revealed the Stalling Defect, Plaintiff would have been aware of it and would not have purchased the Subject Vehicle.

38.    FCA Had Exclusive Knowledge of the Stalling Defect

39.    FCA had superior and exclusive knowledge of the Stalling Defect and knew or should have known that the defect was not known to or reasonably discoverable by Plaintiff and before they purchased or leased the Subject Vehicle.

40.    Defendant knew or should have known, based on FCA's routine monitoring of complaints, that the 2017-2018 Chrysler Pacificas had a dangerous defect that adversely affects their drivability. Additionally, FCA knew or should have known about the Stalling Defect through sources not available to consumers, including FCA's own aggregate pre-market data and other aggregate post-market data from FCA authorized dealers.

41.    Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had Plaintiff known of the Stalling Defect, given the unsafe nature of the Stalling Defect. Furthermore, Plaintiff unknowingly exposed himself to the risk of accident, injury, and/or liability to others as a result of the nature or the Stalling Defect which can lead to loss of power while driving at highway speeds, stalling, loss of control, and other impairments to driveability. Plaintiff is a reasonable consumer who expected the Subject Vehicle to be safe and free of defects and that FCA would not sell or lease vehicles with known safety-related defects, such as the Stalling Defect, and will disclose any such defects to its

consumers when it learns of them.

42.    While it has been fully aware of the Stalling Defect, FCA actively concealed the existence and nature of the alleged defect from Plaintiff at the time of purchase, repair, and thereafter.

43.    FCA was inundated with complaints regarding the Stalling Defect but rather than repair the problem under warranty, FCA dealers either inform consumers that their vehicles are functioning properly or conduct repairs that merely mask the defect.

44.    On or about May 11, 2016, FCA issued TSB 18-057-16 to address customer concerns regarding illumination of the malfunction indicator lamp ("MIL"). The TSB calls for dealers to reprogram the PCM with the latest available software. This TSB was revised on June 17, 2016 by TSB 18-057-16 REV.A to address the same issue.

45.    In or around August 2017, FCA issued Safety Recall T23 for 2017 Chrysler Pacifica vehicles to reprogram the PCM with new software to cure a safety-related defect with the EGR valve.

46.    The defect could cause the EGR valve to be operating with an aggressive seating velocity, which may damage the EGR valve.

47.    The Stalling Defect, which may result in vehicles shutting off, stalling without warning, loss of engine timing, loss of crankshaft position synchronization, and/or loss of power, was not cured by TSB 18-057-16 REV. A and/or Safety Recall T23.

48.    On January 11, 2018, FCA released two Safety Recalls to resolve the stalling issue experienced by customers, Safety Recall U01 / NHTSA 18V-049 and Safety Recall U02 / NHTSA 18V-048.

49.    Safety Recall U01 / NHTSA 18V-049 was issued to address customer concerns regarding an engine stall without prior warning. The Recall states that, "[i]n the majority of cases the stalling occurs at low speed, while decelerating,

while at idle or while negotiating a turn. Engine stalling results in a loss of motive power, which can cause vehicle crash without prior warning." This Recall is FCA's continued attempt to address ongoing stalling issues with repackaged T23 software updates.

50.    Safety Recall U02 / NHTSA 18V-049 was issued to address customer concerns regarding an engine stall and/or a potential engine compartment fire. The Recall states that, '[e]ither of these conditions could increase the likelihood of occupant injury, and an engine stall can cause a vehicle crash without prior warning." This Recall is also another repackaged version of the existing T23 software update.

51.    Neither Recalls, nor the T23 software update, have eliminated the Stalling Defect.

52.    FCA admits in Safety Recall U01 that, at best, the Recall simply provides software that makes vehicles "less susceptible" to a loss of engine timing (crankshaft position synchronization).

53.    FCA has still not modified any of the defective components that cause the symptoms associated with the Stalling Defect.

## FIRST CAUSE OF ACTION
## BY PLAINTIFF AGAINST DEFENDANT FCA
## VIOLATION OF SUBDIVISION (D) OF CIVIL CODE § 1793.2

54.    Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

55.    Defendant FCA and its representatives in this state have been unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of opportunities.  Despite this fact, Defendant failed to promptly replace the Vehicle or make restitution to Plaintiff as required by Civil Code section 1793.2, subdivision (d) and Civil Code section 1793.1, subdivision (a)(2).

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

56.    Plaintiff has been damaged by Defendant's failure to comply with its obligations pursuant to Civil Code section 1793.2, subdivision (d) and Civil Code section 1793.1, subdivision (a)(2), and therefore brings this cause of action pursuant to Civil Code section 1794.

57.    Defendant's failure to comply with its obligations under Civil Code section 1793.2, subdivision (d) was willful, in that Defendant and its representative were aware that they were unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of repair attempts, yet Defendant failed and refused to promptly replace the Vehicle or make restitution. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (c).

58.    Defendant does not maintain a qualified third-party dispute resolution process which substantially complies with Civil Code section 1793.22. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (e).

59.    Plaintiff seeks civil penalties pursuant to section 1794, subdivisions (c), and (e) in the alternative and does not seek to cumulate civil penalties, as provided in Civil Code section 1794, subdivision (f).

## SECOND CAUSE OF ACTION
## BY PLAINTIFF AGAINST DEFENDANT FCA
## VIOLATION OF SUBDIVISION (B) OF CIVIL CODE § 1793.2

60.    Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

61.    Although Plaintiff presented the Vehicle to Defendant's representative in this state, Defendant and its representative failed to commence the service or repairs within a reasonable time and failed to service or repair the Vehicle so as to conform to the applicable warranties within 30 days, in violation of Civil Code section 1793.2, subdivision (b).  Plaintiff did not extend the time for

1    completion of repairs beyond the 30-day requirement.

2         62.    Plaintiff has been damaged by Defendant's failure to comply with its

3    obligations pursuant to Civil Code section 1793.2(b), and therefore brings this

4    Cause of Action pursuant to Civil Code section 1794.

5         63.    Plaintiff has rightfully rejected and/or justifiably revoked acceptance

6    of the Vehicle, and has exercised a right to request a buyback.  By serving this

7    Complaint, Plaintiff do so again.   Accordingly, Plaintiff seeks the remedies

8    provided in California Civil Code section 1794(b)(1), including the entire value of

9    the Vehicle.  In the alternative, Plaintiff seeks the remedies set forth in California

10   Civil Code section 1794(b)(2), including the diminution in value of the Vehicle

11   resulting from its defects. Plaintiff believes that, at the present time, the Vehicle's

12   value is *de minimis.*

13        64.    Defendant FCA'S failure to comply with its obligations under Civil

14   Code section 1793.2(b) was willful, in that Defendant FCA and its representative

15   were aware that they were obligated to service or repair the Vehicle to conform to

16   the applicable express warranties within 30 days, yet they failed to do so.

17   Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual

18   damages pursuant to Civil Code section 1794(c).

19                        **THIRD CAUSE OF ACTION**

20               **BY PLAINTIFF AGAINST DEFENDANT FCA**

21        **VIOLATION OF SUBDIVISION (A)(3) OF CIVIL CODE § 1793.2**

22        65.    Plaintiff incorporates by reference the allegations contained in

23   paragraphs set forth above.

24        66.    In violation of Civil Code section 1793.2, subdivision (a)(3),

25   Defendant failed to make available to its authorized service and repair facilities

26   sufficient service literature and replacement parts to effect repairs during the

27   express warranty period.  Plaintiff has been damaged by Defendant's failure to

28   comply with its obligations pursuant to Civil Code section 1793.2(a)(3), and

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430 LOS ANGELES, CA 90067

11

therefore brings this Cause of Action pursuant to Civil Code section 1794.

67.     Defendant's failure to comply with its obligations under Civil Code section 1793.2, subdivision (a)(3) was wilful, in that Defendant knew of its obligation to provide literature and replacement parts sufficient to allow its repair facilities to effect repairs during the warranty period, yet Defendant failed to take any action to correct its failure to comply with the law. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual damages; pursuant to Civil Code section 1794(c).

**FOURTH CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANT FCA**

**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**

**(CIVIL CODE, § 1791.1; § 1794; § 1795.5)**

68.     Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

69.     Pursuant to Civil Code section 1792, the sale of the Vehicle was accompanied by Defendant's implied warranty of merchantability.  Pursuant to Civil Code section 1791.1, the duration of the implied warranty is coextensive in duration with the duration of the express written warranty provided by Defendant, except that the duration is not to exceed one-year.

70.     Pursuant to Civil Code section 1791.1 (a), the implied warranty of merchantability means and includes that the Vehicle will comply with each of the following requirements:  (1) The Vehicle will pass without objection in the trade under the warranty contract description; (2) The Vehicle is fit for the ordinary purposes for which such goods are used; (3) The Vehicle is adequately contained, packaged, and labelled; (4) The Vehicle will conform to the promises or affirmations of fact made on the container or label.

71.     At the time of entering into the warranty contract, or within one-year thereafter, the Vehicle contained or developed the defects set forth above. The

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

existence of each of these defects constitutes a breach of the implied warranty because the Vehicle (1) does not pass without objection in the trade under the warranty contract description, (2) is not fit for the ordinary purposes for which such goods are used, (3) is not adequately contained, packaged, and labelled, and (4) does not conform to the promises or affirmations of fact made on the container or label.

72.     Plaintiff has been damaged by Defendant's failure to comply with its obligations under the implied warranty, and therefore brings this Cause of Action pursuant to Civil Code section 1794.

## FIFTH CAUSE OF ACTION
## BY PLAINTIFF AGAINST DEFENDANT FCA
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

73.     Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

74.     Plaintiff is a "consumer" as defined in the Magnuson-Moss Warranty Act (referred to as "Mag-Moss"), 15 U.S.C. § 2301(3).

75.     Defendant is a "supplier" and "warrantor" as defined in the Mag-Moss Act, 15 U.S.C. § 2301(4), 15 U.S.C. § 2301(5).

76.     The Subject Vehicle is a "consumer product" as defined in the Mag-Moss Act, 15 U.S.C. § 2301(1).

77.     In addition to the express warranty, in connection with the sale of the Vehicle to Plaintiff, an implied warranty of merchantability was created under California law. The Subject Vehicle's implied warranties were not disclaimed using a Buyer's Guide displayed on the Vehicle; thus any purported disclaimers were ineffective pursuant to 15 U.S.C. § 2308(c).

78.     In accordance with Defendant's warranty, Plaintiff delivered the Vehicle to Defendant's representatives, including its representatives in this state to perform warranty repairs. Plaintiff did so within a reasonable time. Each time

Plaintiff delivered the Vehicle, Plaintiff notified Defendant and its representative of the characteristics of the defects. However, the representative failed to repair the Vehicle, breaching the terms of the written warranty on each occasion

79.    Defendant violated the Mag-Moss Act when it breached the express warranty and implied warranties by failing to repair the defects and nonconformities, or to repurchase and/or replace the Subject Vehicle.

80.    Plaintiff performed all terms, conditions, covenants, promises and obligations required to be performed on Plaintiff's part under the terms of the agreement, express warranty and implied warranty except for those terms and conditions, covenants, promises and obligations or payments for which performance and/or compliance has been excused by the acts and/or conduct of Defendant and/or by operation of law

81.    Plaintiff has also met all of Plaintiff's obligations and preconditions to bring this claim, or alternatively it would have been futile for Plaintiff to do so.

82.    In addition, Plaintiff has met all of Plaintiff's obligations for bringing this claim as provided in the written warranties, or alternatively, Defendant does not maintain an informal dispute resolution process for the purpose of resolving claims for breach of the implied warranty of merchantability, and does not maintain an informal dispute resolution process for resolving express warranty claims that complies with the requirements of 15 U.S.C. § 2310(a) and the rules and regulations adopted pursuant thereto by the Federal Trade Commission.

83.    As a direct and proximate result of the acts and omissions of the Defendant, Plaintiff has been damaged in the form of general, special and actual damages in an amount within the jurisdiction of this Court, according to proof at trial.

84.    Under the Act, Plaintiff is entitled to reimbursement of the entire amount paid or payable.

85.    Plaintiff is entitled to all incidental, consequential, penalties, and

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

general damages resulting from Defendant's failure to comply with their obligations under the Mag-Moss Act.

86.    Plaintiff has been damaged by Defendant's failure to comply with its obligations under the express warranty, implied warranty, as well as any other violations alleged here, and therefore bring this claim pursuant to 15 U.S.C. §2310(d) and seek remedies available pursuant to Magnuson-Moss Act under California law, including California Civil Code Section 1794 and/or California Commercial Code Sections 2711-2715, and/or other remedies that the Court may deem proper.

87.    Plaintiff is entitled under the Mag-Moss Act to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees, reasonably incurred in connection with the commencement and prosecution of this action pursuant to 15 U.S.C. § 2310(d)(2).

**SIXTH CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANT FCA**

**FRAUDULENT INDUCEMENT – CONCEALMENT**

88.    Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

89.    Plaintiff is informed, believes, and thereon alleges that FCA knew since prior to Plaintiff purchasing the Subject Vehicle, that the 2018 Chrysler Pacifica vehicles equipped with a 9HP transmission is defective along with the Powertrain Control Module (PCM), including Plaintiff's 2018 Chrysler Pacifica, contained one or more defects related to the operation of the Powertrain Control Module that results in stalling, loss of crankshaft position synchronization, shifting problems, acceleration problems, and/or loss of power, (the "Stalling Defect").

**The Stalling Defect**

90.    2017-2018 Chrysler Pacifica vehicles equipped with a 3.6L engine and 9HP transmission ("Pacifica Vehicles"), as does the Subject Vehicle, contain

a defect that causes the PCM to lose engine timing, crankshaft synchronization, and/or communication with the powertrain components it is meant to control (i.e. the engine and/or transmission), resulting in Pacifica Vehicles jerking, failing to accelerate, shutting off, or stalling without warning. This loss of communication with the PCM, even momentarily, can also result in total loss of power, including power steering, which can prevent acceleration, deceleration, and steering and significantly impair driver control.

91.     In addition, faults from the 9HP transmission, which communicates with the PCM, can also cause Pacifica Vehicles to abruptly lose power. Further, the software included on the Subject Vehicle can improperly close the EGR valve and cause it to become damaged and allow the spent exhaust gases to flow all the time. The recall describes this as "an aggressive seating velocity," effectively slamming the valve into the seat. Some recalls, including T23 and U01 (which is essentially the same repair as its predecessor T23), are designed to resolve this problem with new software. However, the software update is not a fix. For example, if the valve has already been damaged by this problem, this recall does nothing to check for or resolve the possible damage to the EGR valve seat, which may lead to serious loss of power and vehicle stalling. This sudden loss of power may be exhibited as a bucking or surging and cause unexplained transmission performance problems and failures.

92.     Thus, the Stalling Defect is a safety concern because it severely affects the driver's ability to control the car's speed, acceleration, and deceleration. For example, these conditions make it difficult to safely merge into traffic or may cause a sudden loss of power while in motion. Even more troubling, the transmission and (and PCM) defect can cause the vehicle to fail without warning, while the Vehicle is moving at highway speeds.

**FCA'S Knowledge of the Stalling Defect**

93.     Plaintiff is informed, believes, and thereon alleges that prior to

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

Plaintiff acquiring the Vehicle, FCA was well aware and knew that the transmission installed in the Vehicle was defective but failed to disclose this fact to Plaintiff at the time of sale and thereafter.

94.    Plaintiff is informed, believes, and thereon alleges that FCA acquired its knowledge of the Stalling Defect prior to Plaintiff acquiring the Vehicle, through sources not available to consumers such as Plaintiff, including but not limited to pre-production and post-production testing data; early consumer complaints about the Stalling Defect made directly to FCA and its network of dealers; aggregate warranty data compiled from FCA's network of dealers; testing conducted by FCA in response to these complaints; as well as warranty repair and part replacements data received by FCA from FCA's network of dealers, amongst other sources of internal information.

95.    Plaintiff is informed, believes, and thereon alleges that while FCA knew about the Stalling Defect, and its safety risks since prior to Plaintiff purchasing the Subject Vehicle, FCA nevertheless concealed and failed to disclose the defective nature of the Vehicle and its transmission (and PCM) to its sales representatives and Plaintiff at the time of sale and thereafter.  FCA omitted mention of the Stalling Defect to its consumers.

96.    Plaintiff is a reasonable consumer who interacted with sales representatives, considered FCA's advertisement, and/or other marketing materials concerning the FCA Vehicles prior to purchasing the Subject Vehicle. Had FCA revealed the Stalling Defect, Plaintiff would have been aware of it and would not have purchased the Subject Vehicle.

**FCA Had Exclusive Knowledge of the Stalling Defect**

97.    FCA had superior and exclusive knowledge of the Stalling Defect and knew or should have known that the defect was not known to or reasonably discoverable by Plaintiff and before they purchased the Vehicle.

98.    Defendant knew or should have known, based on FCA's routine

monitoring of complaints, that the 2017-2018 Chrysler Pacificas had a dangerous defect that adversely affects their drivability. Additionally, FCA knew or should have known about the Stalling Defect through sources not available to consumers, including FCA's own aggregate pre-market data and other aggregate post-market data from FCA authorized dealers.

99.    Plaintiff would not have purchased or leased the Vehicle or would have paid less for it had Plaintiff known of the Stalling Defect, given the unsafe nature of the Stalling Defect. Furthermore, Plaintiff unknowingly exposed themselves to the risk of accident, injury, and/or liability to others as a result of the nature or the Stalling Defect which can lead to loss of power while driving at highway speeds, stalling, loss of control, and other impairments to driveability. Plaintiff is a reasonable consumer who expected the Vehicle to be safe and free of defects and that FCA would not sell or lease vehicles with known safety-related defects, such as the Stalling Defect, and will disclose any such defects to its consumers when it learns of them.

100.    While it has been fully aware of the Stalling Defect, FCA actively concealed the existence and nature of the alleged defect from Plaintiff at the time of purchase, lease, repair and thereafter.

101.    FCA was inundated with complaints regarding the Stalling Defect but rather than repair the problem under warranty, FCA dealers either inform consumers that their vehicles are functioning properly or conduct repairs that merely mask the defect.

102.    On or about May 11, 2016, FCA issued TSB 18-057-16 to address customer concerns regarding illumination of the malfunction indicator lamp ("MIL"). The TSB calls for dealers to reprogram the PCM with the latest available software. This TSB was revised on June 17, 2016 by TSB 18-057-16 REV.A to address the same issue.

103.    In or around August 2017, FCA issued Safety Recall T23 for 2017

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

Chrysler Pacifica vehicles to reprogram the PCM with new software to cure a safety-related defect with the EGR valve.

104.   The defect could cause the EGR valve to be operating with an aggressive seating velocity, which may damage the EGR valve.

105.   The Stalling Defect, which may result in vehicles shutting off, stalling without warning, loss of engine timing, loss of crankshaft position synchronization, and/or loss of power, was not cured by TSB 18-057-16 REV. A and/or Safety Recall T23.

106.   On January 11, 2018, FCA released two Safety Recalls to resolve the stalling issue experienced by customers, Safety Recall U01 / NHTSA 18V-049 and Safety Recall U02 / NHTSA 18V-048.

107.   Safety Recall U01 / NHTSA 18V-049 was issued to address customer concerns regarding an engine stall without prior warning. The Recall states that, "[i]n the majority of cases the stalling occurs at low speed, while decelerating, while at idle or while negotiating a turn. Engine stalling results in a loss of motive power, which can cause vehicle crash without prior warning." This Recall is FCA's continued attempt to address ongoing stalling issues with repackaged T23 software updates.

108.   Safety Recall U02 / NHTSA 18V-049 was issued to address customer concerns regarding an engine stall and/or a potential engine compartment fire. The Recall states that, '[e]ither of these conditions could increase the likelihood of occupant injury, and an engine stall can cause a vehicle crash without prior warning." This Recall is also another repackaged version of the existing T23 software update.

109.   Neither Recalls, nor the T23 software update, have eliminated the Stalling Defect.

110.   FCA admits in Safety Recall U01 that, at best, the Recall simply provides software that makes vehicles "less susceptible" to a loss of engine timing

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

1   (crankshaft position synchronization).

2   111.   Moreover, in Safety Recall 18V-048 FCA stated it would "resolve

3   this important safety issue." This is untrue. Safety Recall 18V-048 was simply a

4   repackaged version of the existing T23 software update. Neither the recall nor the

5   T23 software update eliminated the Stalling Defect.

6   112.   FCA has still not modified any of the defective components that cause

7   the symptoms associated with the Stalling Defect.

8   **Fraudulent Inducement – Concealment**

9   113.   FCA committed fraud by allowing the Subject Vehicle to be sold to

10   Plaintiff without disclosing that the Subject Vehicle and its transmission (and

11   PCM) was defective and susceptible to loss of power while driving at highway

12   speeds, stalling, loss of control, and other impairments to driveability.

13   114.   Indeed, Plaintiff alleges that prior to the sale of the Subject Vehicle

14   to Plaintiff, FCA knew that the Vehicle and its transmission suffered from an

15   inherent defect, was defective, would fail prematurely, and was not suitable for its

16   intended use.

17   115.   FCA was under a duty to Plaintiff to disclose the defective nature of

18   the Vehicle and its transmission, its safety consequences and/or the associated

19   repair costs because:

20   a.     Plaintiff is informed, believes, and thereon alleges that

21   FCA acquired its knowledge of the Stalling Defect and its potential

22   consequences prior to Plaintiff acquiring the Vehicle, through sources

23   not available to consumers such as Plaintiff, including but not limited

24   to pre-production testing data, early consumer complaints about the

25   Stalling Defect made directly to FCA and its network of dealers,

26   aggregate warranty data compiled from FCA's network of dealers,

27   testing conducted by FCA in response to these complaints, as well as

28   warranty repair and part replacements data received by FCA from

Strategic Legal Practices, APC
1840 Century Park East, Suite 430, Los Angeles, CA 90067

FCA's network of dealers, amongst other sources of internal information;

b.    FCA was in a superior position from various internal sources to know (or should have known) the true state of facts about the material defects contained in vehicles equipped with 9HP transmission; and

c.    Plaintiff could not reasonably have been expected to learn or discover of the Vehicle's Stalling Defect and its potential consequences until well after Plaintiff purchased the Vehicle.

116.  In failing to disclose the defects in the Vehicle's transmission (and PCM), FCA has knowingly and intentionally concealed material facts and breached its duty not to do so.

117.  The facts concealed or not disclosed by FCA to Plaintiff is material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Vehicle.  Had Plaintiff known that the Vehicle and its transmissions (and PCM) were defective at the time of sale, he would not have purchased the Vehicle.

118.  Plaintiff is a reasonable consumer who interacted with FCA's sales representatives and reviewed materials disseminated by FCA concerning FCA Vehicles prior to purchasing the Subject Vehicle. Had Defendant disclosed the Stalling Defect, a safety hazard, to its sales representatives and/or the consumer public, Plaintiff would have been aware of it and would not have purchased the Subject Vehicle.

119.  Plaintiff was harmed by purchasing a vehicle that Plaintiff would not have leased and/or purchased had Plaintiff known the true facts about the Stalling Defect .

120.  Furthermore, Plaintiff unknowingly exposed himself to the risk of liability, accident and injury as a result of Defendant's fraudulent concealment of

the Stalling Defect.

## PRAYER

PLAINTIFF PRAYS for judgment against Defendant as follows:

a.   For general, special, and actual damages according to proof;

b.   For restitution;

c.   For any consequential and incidental damages;

d.   For revocation of acceptance of the Subject Vehicle, rescission, reimbursement and/or restitution of all monies expended;

e.   For diminution in value;

f.   For a civil penalty in the amount of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (c) or (e);

g.   For punitive damages;

h.   For prejudgment interest at the legal rate;

i.   For costs of the suit and Plaintiff's reasonable attorneys' fees pursuant to Civil Code section 1794, subdivision (d);

j.   For costs, expenses and attorney's fees reasonably incurred in connection with the commencement and prosecution of this action pursuant to 15 U.S.C. § 2310(d)(2); and

k.   For such other relief as the Court may deem proper.

Dated: December 10, 2021                STRATEGIC LEGAL PRACTICES, APC

BY:  _____/s/ Tionna Dolin_____
        TIONNA DOLIN
        Attorneys for Plaintiff,
        JOSE OLGUIN JR.

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430 LOS ANGELES, CA 90067

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff hereby demands a jury trial on all causes of action asserted herein.

Dated: December 10, 2021                    STRATEGIC LEGAL PRACTICES, APC


                                    BY:    _____/s/ Tionna Dolin_____
                                            TIONNA DOLIN
                                            Attorneys for Plaintiff,
                                            JOSE OLGUIN JR.

**COMPLAINT; JURY TRIAL DEMANDED**

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

# Exhibit A

WARRANTY INFORMATION - GAS

2018

All Vehicles



CHRYSLER

*IMPORTANT*

*This booklet contains FCA US LLC limited warranties. It should be kept in your vehicle and presented to your Dealer if any warranty service is needed.*

*The warranty text begins on page 4 of this booklet.*

**WARRANTY COVERAGE AT A GLANCE**

| DESCRIPTION | 1 Yr/ 12,000 Mi | 2 Yr/ 24,000 Mi | 3 Yr/ 36,000 Mi | 3 Yr/ 50,000 Mi | 3 Yr/ Unlimited | 5 Yr/ 50,000 Mi | 5 Yr/ 60,000 Mi | 5 Yr/ 100,000 Mi | 5 Yr/ Unlimited | 7 Yr/ 70,000 Mi | 8 Yr/ 80,000 Mi |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Basic Limited Warranty Coverage | ▮ | ▮ | ▮ | | | | | | | | |
| **Special Extended Warranty Coverage** | | | | | | | | | | | |
| Anti-Corrosion Perforation Limited Warranty: | | | | | | | | | | | |
| — All Panels | ▮ | ▮ | ▮ | | | | | | | | |
| — Outer Panels | ▮ | ▮ | ▮ | ▮ | ▮ | | | | | | |
| Powertrain Limited Warranty | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | | |
| Federal Emissions Warranty | ▮ | ▮ | ▮ | | | | | | | | |
| Federal Emissions Warranty: | | | | | | | | | | | |
| — Specified Comp. | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ |

1

**2**

## TABLE OF CONTENTS

1. Your Legal Rights Under These Limited Warranties  . 4

2. What's Covered Under FCA US LLC's Warranties . . 5
   2.1 Basic Limited Warranty . . . . . . . . . . . . . . 5
   2.2 Corrosion Warranty . . . . . . . . . . . . . . . . 8
   2.3 Restraint System Limited Warranty
       (Vehicles Sold And Registered In The State Of
       Kansas Only) . . . . . . . . . . . . . . . . . . . . 8
   2.4 Powertrain Limited Warranty . . . . . . . . . . . 9

3. What's Not Covered . . . . . . . . . . . . . . . . . 12
   3.1 Modifications Not Covered . . . . . . . . . . . . 12
   3.2 Environmental Factors Not Covered . . . . . . . 13
   3.3 Maintenance Costs Not Covered . . . . . . . . . 13
   3.4 Racing Not Covered . . . . . . . . . . . . . . . 13
   3.5 Certain Kinds Of Corrosion Not Covered . . . . 14
   3.6 Other Exclusions . . . . . . . . . . . . . . . . . 14
   3.7 Total Loss, Salvage, Junk, Or Scrap Vehicles
       Not Covered . . . . . . . . . . . . . . . . . . . . 15
   3.8 Restricted Warranty . . . . . . . . . . . . . . . . 15

4. Other Terms Of Your Warranties . . . . . . . . . . 16
   4.1 Exchanged Parts May Be Used In Warranty
       Repairs . . . . . . . . . . . . . . . . . . . . . . . 16
   4.2 Pre-Delivery Service . . . . . . . . . . . . . . . 16
   4.3 Production Changes . . . . . . . . . . . . . . . . 16

5. Emission Warranties Required By Law
   5.1 Federal Emission Warranty . . . . . . . . . . . . 17
   5.2 Emission Performance Warranty . . . . . . . . . 18

6. How To Get Warranty Service . . . . . . . . . . . . 19
   6.1 Where To Take Your Vehicle . . . . . . . . . . . 19
   6.2 How To Get Roadside Assistance Service -
       U.S. Or Canada Only * . . . . . . . . . . . . . . 20
   6.3 Emergency Warranty Repairs . . . . . . . . . . . 23
   6.4 Getting Service Under The Federal Emission
       Performance Warranties . . . . . . . . . . . . . . 23

7. How To Deal With Warranty Problems . . . . . . . . . 24
7.1 Steps To Take . . . . . . . . . . . . . . . . . . . . . .24
7.2 Helpful Addresses And Telephone Numbers  . . .27

8. Optional Service Contract  . . . . . . . . . . . . . . . . . .29

9. Maintenance  . . . . . . . . . . . . . . . . . . . . . . . .30
9.1 General Information  . . . . . . . . . . . . . . . . . .30
9.2 Where To Go For Maintenance . . . . . . . . . . . .30

**TABLE OF CONTENTS**

3

# 1. Your Legal Rights Under These Limited Warranties

The warranties contained in this booklet are the only express warranties that FCA US LLC ("FCA US") makes for your vehicle. **These warranties give you specific legal rights. You may also have other rights that vary from state to state.** For example, you may have some implied warranties, depending on the state where your vehicle was sold or is registered.

These implied warranties are limited, to the extent allowed by law, to the time periods covered by the express written warranties contained in this booklet.

If you use your vehicle primarily for business or commercial purposes, then these implied warranties do not apply and FCA US completely disclaims them to the extent allowed by law. And the implied warranty of fitness for a particular purpose does not apply if your vehicle is used for racing, even if the vehicle is equipped for racing.

**Some states do not allow limitations on how long an implied warranty lasts, so the above limitations may not apply to you.**

## 1.1 Incidental And Consequential Damages Not Covered

**Your warranties don't cover any incidental or consequential damages connected with your vehicle's failure, either while under warranty or afterward.**

Examples of such damages include:

- Lost time;
- Inconvenience;
- The loss of the use of your vehicle;
- The cost of rental vehicles, gasoline, telephone, travel, or lodging;
- The loss of personal or commercial property; and
- The loss of revenue.

**Some states don't allow incidental or consequential damages to be excluded or limited, so this exclusion may not apply to you.**

# 2. What's Covered Under FCA US LLC's Warranties

## 2.1 Basic Limited Warranty

### A. Who Is Covered?

You are covered by the Basic Limited Warranty if you are a purchaser for use of the vehicle.

### B. What's Covered

The Basic Limited Warranty covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation. There is no list of covered parts since the only exception are tires and Unwired headphones. You pay nothing for these repairs. These warranty repairs or adjustments — including all parts and labor connected with them — will be made by an authorized dealer at no charge, using new or remanufactured parts.

### C. Items Covered By Other Warranties

The following are covered by separate warranties offered by their makers. They are **not covered** by the Basic Limited Warranty:

- Tires;
- Unwired headphones; or
- Items added or changed after your vehicle left the manufacturing plant, such as accessories or protection products, or items changed because of customization or van conversion.

Be sure you get a copy of any warranty that applies to these items from an authorized dealer, or from the maker of the product. You can find the tire and unwired headphone warranty statements in your Owner's Literature Package.

**5**

## D. Towing Costs Are Covered Under Certain Circumstances

The Roadside Assistance covers the cost of towing your vehicle to the nearest Chrysler, Dodge, Jeep, or Ram dealer if your vehicle becomes disabled as a result of a mechanical breakdown. If you choose to go to another dealership, you will be responsible for the cost if the extra distance exceeds ten miles. See Section 6.2 for information on how to get towing service in the United States and Canada.

## E. When It Begins

The Basic Limited Warranty begins on either of the following dates, whichever is earlier:

- The date you take delivery of the vehicle; or

- The date when the vehicle was first put into service — for example, as a dealer "demo" or as a FCA US company vehicle.

## F. When It Ends

The Basic Limited Warranty lasts for 36 months from the date it begins or for 36,000 miles on the odometer, whichever occurs first. But the following items are covered only for 12 months or for 12,000 miles on the odometer, whichever occurs first:

- Brakes (rotors, pads, linings, and drums);

- Wiper Blades;

- Clutch Discs or Modular Clutch Assembly (as equipped);

- Windshield and Rear Window; and

- Wheel Alignment and Wheel Balancing.

## G. Registration And Operation Requirements

The Basic Limited Warranty covers your vehicle only if:

- It was built for sale in the U.S.;
- It's registered in the U.S.;
- It's driven mainly in the U.S. or Canada; and
- It's operated and maintained in the manner described in your Owner's Manual.

## H. If Your Vehicle Leaves the United States (We Include U.S. Possessions and Territories as Part of the United States for Warranty Purposes):

**EXCEPT WHERE SPECIFICALLY REQUIRED BY LAW, THERE IS NO WARRANTY COVERAGE ON THIS VEHICLE IF IT IS SOLD IN OR REGISTERED IN COUNTRIES OTHER THAN THE UNITED STATES.**

This policy does not apply to vehicles that have received authorization for export from FCA US. Dealers may not give authorization for export. You should consult an authorized dealer to determine this vehicle's warranty coverage if you have any questions.

This policy does not apply to vehicles registered to U.S. government officials or military personnel on assignment outside of the United States.

7

## 2.2 Corrosion Warranty

### A. Who Is Covered?

You are covered if you are a purchaser for use of the vehicle.

### B. What's Covered

This warranty covers the cost of all parts and labor needed to repair or replace any sheet metal panels that get holes from rust or other corrosion. If a hole occurs because of something other than corrosion, this warranty does not apply. Cosmetic or surface corrosion — resulting, for example, from stone chips or scratches in the paint — is not covered. For more details on what isn't covered by this warranty, see 3.5.

### C. How Long It Lasts

The Corrosion Warranty starts when your Basic Limited Warranty begins under 2.1 E.

This warranty has two time-and-mileage limits:

- For sheet metal panels, the limit is 36 months, with no mileage limit.

- For an outer-body sheet metal panel — one that is finish-painted and that someone can see when walking around the vehicle — the limits are five years or unlimited miles on the odometer, whichever occurs first.

### D. What's Not Covered

Please note that while the standard Corrosion Limited Warranty applies to defects in material and/or workmanship, it does not cover the vehicle's matte finish appearance (if equipped).

Maintaining the matte finish appearance is solely the responsibility of the vehicle owner as described in your Owner's Information.

## 2.3 Restraint System Limited Warranty (Vehicles Sold And Registered In The State Of Kansas Only)

For vehicles sold and registered in the State of Kansas, seat belts and related seat belt components are warranted against defects in workmanship and materials for ten years, regardless of mileage. This warranty does not cover replacement of seat belts and related components required as the result of collision.

## 2.4 Powertrain Limited Warranty

### A. Who Is Covered?

You are covered by the Powertrain Limited Warranty if you are a purchaser for use of the vehicle.

### B. What's Covered

The Powertrain Limited Warranty covers the cost of all parts and labor needed to repair a powertrain component listed in section 2.4 E below that is defective in workmanship and materials.

### C. How Long It Lasts

The Powertrain Limited Warranty lasts for up to five years or 60,000 miles on the odometer, whichever occurs first, calculated from the start date of the Basic Limited Warranty, as set forth in Section 2.1 E.

### D. Towing Costs Are Covered

The Roadside Assistance covers the cost of towing your vehicle to the nearest authorized Chrysler, Dodge, Jeep or Ram dealer if your vehicle cannot be driven because a covered part has failed.

If you choose to go to another dealership, you will be responsible for the cost if the extra distance exceeds ten miles. See Section 6.2 for information on how to get towing service in the United States and Canada.

## WHAT'S COVERED UNDER FCA US LLC'S WARRANTIES

### E. Parts Covered

The Powertrain Limited Warranty covers these parts and components of your vehicle's powertrain supplied by FCA US:

#### Gasoline Engine:

Cylinder block and all internal parts; cylinder head assemblies; timing case, timing chain, timing belt, gears and sprockets; vibration damper; oil pump; water pump and housing; intake and exhaust manifolds; flywheel with starter ring gear; core plugs; valve covers; oil pan; turbocharger housing and internal parts; turbocharger wastegate actuator; supercharger; serpentine belt tensioner; seals and gaskets for listed components only.

#### Transmission:

**Transmission:**

Transmission case and all internal parts; torque converter; drive/flex plate; transmission range switch; speed sensors; pressure sensors; transmission control module; bell housing; oil pan; seals and gaskets for listed components only.

**NOTE:** MANUAL TRANSMISSION CLUTCH PARTS ARE NOT COVERED AT ANY TIME.

#### Front Wheel Drive:

Transaxle case and all internal parts; axle shaft assemblies; constant velocity joints and boots; differential cover; oil pan; transaxle speed sensors; transaxle solenoid assembly; PRNDL position switch; transaxle electronic controller; torque converter; seals and gaskets for listed components only.

**NOTE:** MANUAL TRANSMISSION CLUTCH PARTS ARE NOT COVERED AT ANY TIME.

#### All Wheel Drive (AWD):

Power transfer unit and all internal parts; viscous coupler; axle housing and all internal parts; constant velocity joints and boots; driveshaft and axle shaft assemblies; differential carrier assembly and all internal parts; output ball bearing; output flange; end cover; overrunning clutch; vacuum motor; torque tube; pinion spacer and shim, seals and gaskets for listed components only.

**Rear Wheel Drive:**

Rear axle housing and all internal parts; axle shaft bearings; drive shaft assemblies; drive shaft center bearings; universal joints and yokes; seals and gaskets for listed components only.

**Four-Wheel Drive (4X4):**

Transfer case and all internal parts; transfer case control module and shift mode motor assembly; axle housing and all internal parts; axle shafts; axle shaft bearings; drive shafts assemblies (front and rear); drive shaft center bearings; universal joints and yokes; disconnect housing assembly; seals and gaskets for the listed components only.

## WHAT'S COVERED UNDER FCA US LLC'S WARRANTIES

## F. Other Provisions Of This Powertrain Limited Warranty

All other terms of the New Vehicle Limited Warranty including the Section 1 (Your Rights Under These Limited Warranties) and Section 3 (What's Not Covered) apply to this Powertrain Limited Warranty.

11

# 3. What's Not Covered

## 3.1 Modifications Not Covered

### A. Some Modifications Don't Void The Warranties But Aren't Covered

Certain changes that you might make to your vehicle do not, by themselves, void the warranties described in this booklet. Examples of some of these changes are:

- Installing non-FCA US parts, components, or equipment (such as a non-FCA US radio or speed control); and

- Using special non-FCA US materials or additives.

But your warranties don't cover any part that was not on your vehicle when it left the manufacturing plant or is not certified for use on your vehicle. Nor do they cover the costs of any repairs or adjustments that might be caused or needed because of the installation or use of non-FCA US parts, components, equipment, materials, or additives.

Performance or racing parts are considered to be non-FCA US parts. Repairs or adjustments caused by their use are not covered under your warranties.

Examples of the types of alterations not covered are:

- Installing accessories — except for genuine FCA US/MOPAR accessories installed by an authorized Chrysler, Dodge, Jeep or Ram dealer;

- Applying rustproofing or other protection products;

- Changing the vehicle's configuration or dimensions, such as converting the vehicle into a limousine or food service vehicle; or

- Using any refrigerant that FCA US has not approved.

### B. Modifications That WILL Void Your Warranties

These actions will void your warranties:

- Disconnecting, tampering with, or altering the odometer will void your warranties, unless your repairing technician follows the legal requirements for repairing or replacing odometers; or

- Attaching any device that disconnects the odometer will also void your warranties.

12

## 3.2 Environmental Factors Not Covered

Your warranties don't cover damage caused by environmental factors such as airborne fallout, bird droppings, insect damage, chemicals, tree sap, salt, ocean spray, acid rain, and road hazards. Nor do your warranties cover damage caused by hailstorms, windstorms, tornadoes, sandstorms, lightning, floods, and earthquakes.

Your warranties do not cover conditions resulting from anything impacting the vehicle. This includes cracks and chips in glass, scratches and chips in painted surfaces, or damage from collision.

## 3.3 Maintenance Costs Not Covered

Your warranties don't cover the costs of repairing damage caused by poor or improper maintenance. Nor do they cover damage caused by the use of contaminated fuels, or by the use of fuels, oils, lubricants, cleaners or fluids other than those recommended in your Owner's Manual.

The warranties don't cover the costs of your vehicle's normal or scheduled maintenance — the parts and services that all vehicles routinely need. Some of these parts and services, which your warranties don't cover, include:

- Lubrication;

- Engine tune-ups;

- Replacing filters, coolant, spark plugs, bulbs, or fuses (unless those costs result from a covered repair);

- Cleaning and polishing; and

- Replacing worn wiper blades, worn brake pads and linings, or clutch linings.

## 3.4 Racing Not Covered

Your warranties don't cover the costs of repairing damage or conditions caused by racing, nor do they cover the repair of any defects that are found as the result of participating in a racing event.

13

14

## 3.5 Certain Kinds Of Corrosion Not Covered

Your warranties don't cover the following:

- Corrosion caused by accident, damage, abuse, or vehicle alteration;

- Surface corrosion caused by such things as industrial fallout, sand, salt, hail, ocean spray, and stones;

- Corrosion caused by the extensive or abnormal transport of caustic materials like chemicals, acids, and fertilizers; and

- Corrosion of special bodies, body conversions, or equipment that was not on your vehicle when it left the manufacturing plant or was not supplied by FCA US.

## 3.6 Other Exclusions

Your warranties don't cover the costs of repairing damage or conditions caused by any of the following:

- Fire or accident;

- Abuse or negligence;

- Misuse — for example, driving over curbs or over-loading;

- Tampering with the emission systems, or with a part that could affect the emission systems;

- Use of used parts, even if they were originally supplied by FCA US (however, authorized FCA US / MOPAR remanufactured parts are covered);

- Windshield or rear window damage from external objects;

- Any changes made to your vehicle that don't comply with FCA US; or

- Using any fluid that doesn't meet the minimum recommendations in your Owner's Manual.

## 3.7 Total Loss, Salvage, Junk, Or Scrap Vehicles Not Covered

A vehicle has no warranty coverage of any kind if:

- The vehicle is declared to be a total loss by an insurance company;

- The vehicle is rebuilt after being declared to be a total loss by an insurance company; or

- The vehicle is issued a certificate of title indicating that it is designated as "salvage," "junk," "rebuilt," "scrap," or some similar word.

FCA US will deny warranty coverage without notice if it learns that a vehicle is ineligible for coverage for any of these reasons.

## 3.8 Restricted Warranty

Your warranties can also be restricted by FCA US. FCA US may restrict the warranty on your vehicle if the vehicle is not properly maintained, or if the vehicle is abused or neglected, and the abuse or neglect interferes with the proper functioning of the vehicle. If the warranty is restricted, coverage may be denied or subject to approval by FCA US before covered repairs are performed.

16

# 4. Other Terms Of Your Warranties

## 4.1 Exchanged Parts May Be Used In Warranty Repairs

In the interest of customer satisfaction, FCA US may offer exchange service on some vehicle parts. This service is intended to reduce the amount of time your vehicle is not available for your use because of repairs. Parts used in exchange service may be new, remanufactured, reconditioned, or repaired, depending on the part involved.

All exchange parts that might be used meet FCA US standards, and have the same warranties as new parts.

Examples of the kinds of parts that might be serviced in this way are:

- Engine assemblies;
- Transmission assemblies;
- Instrument Cluster Assemblies;
- Radios, CD and DVD players;
- Speedometers; and
- Powertrain Control Modules.

To help control suspected ozone-depleting agents, the EPA requires the capture, purification, and reuse of automotive air-conditioning refrigerant gases. As a result, a repair to the sealed portion of your air-conditioning system may involve the installation of purified reclaimed refrigerant.

## 4.2 Pre-Delivery Service

A defect in or damage to the mechanical, electrical, sheet-metal, paint, trim, and other components of your vehicle may have occurred at the factory or while it was being shipped to an authorized dealer.

Such a defect or damage is usually detected and corrected at the factory. In addition, dealers must inspect each vehicle before delivery. They repair any defects or damage detected before the vehicle is delivered to you.

## 4.3 Production Changes

Changes may be made in vehicles sold by FCA US and its authorized dealers at any time without incurring any obligation to make the same or similar changes on vehicles previously built or sold.

# 5. Emission Warranties Required By Law

## 5.1 Federal Emission Warranty

### A. Parts Covered For 2 Years Or 24,000 Miles

Federal law requires FCA US to warrant the following emissions parts for 2 years or 24,000 miles, whichever occurs first. FCA US covers all of these parts under the Basic Limited Warranty for 3 years or 36,000 miles, whichever occurs first.

- Air System Controls;

- Electronic Fuel Injection System (including injector);

- Evaporative-Emission Canister and Controls;

- Exhaust Manifold;

- Exhaust Gas Recirculation Valve and Control System;

- Exhaust Pipes (between exhaust manifold and catalyst);

- Fuel Cap and Tank Assembly, Pump, and Fuel Lines;

- Ignition System;

- Intake Manifold;

- On-Board Diagnostic-System Components;

- Oxygen Sensors;

- Positive Crankcase-Ventilation (PCV) Valve or Orifice;

- Secondary Ignition Wires;

- Spark Plugs;

- Throttle Body;

- Transmission-Control Module;

- Vacuum Hoses, Clamps, and Fittings (as well as tubing used for these components);

- Vacuum, Temperature, Altitude, Speed, Time-Sensitive Valves, Sensors, and Switches (used in these components and systems.)

17

### B. Parts Covered For 8 Years Or 80,000 Miles

If your vehicle has one of the following parts, this Federal Emission Warranty covers that part for a period of 8 years or 80,000 miles, whichever occurs first, calculated from the start of the Basic Limited Warranty as set forth in Section 2.1 E. The covered parts are:

- Catalytic Converter; and
- Powertrain Control Module.

## 5.2 Emission Performance Warranty

This warranty supplements the federal warranty under 5.1. It lasts for two years or 24,000 miles on the odometer, whichever occurs first. If your vehicle has one of the following parts, catalytic converter and powertrain control module, this Federal Emission Warranty covers that part for a period of eight years or 80,000 miles, whichever occurs

first. These limits are counted from the time when your Basic Limited Warranty begins under 2.1 E. The Emission Performance Warranty covers the cost of repairing or adjusting any components or parts that might be needed for your vehicle to pass Federal Emission Standards for a federally approved state or local emissions test, but only if:

- Your vehicle has failed a federally approved state or local emissions test;

- Your vehicle has been maintained and operated properly up until it fails such a test; and

- You face a real penalty — for example, a fine or the loss of the use of your vehicle — because the vehicle has failed the test.

Section 6.4 explains how to get service under this warranty.

# 6. How To Get Warranty Service

## 6.1 Where To Take Your Vehicle

### A. In the United States (We Include U.S. Possessions And Territories As Part Of The United States For Warranty Purposes):

Warranty service must be done by an authorized Chrysler, Dodge, Jeep or Ram dealer. We strongly recommend that you take your vehicle to your Selling Dealer. They know you and your vehicle best, and are most concerned that you get prompt and high quality service. If you move within the United States, warranty service may be requested from any authorized Chrysler, Dodge, Jeep or Ram dealer.

### B. In Canada And Mexico:

If you are traveling temporarily in Canada or Mexico, and your vehicle remains registered in the United States, your FCA US warranty still applies. Service may be requested at any authorized Chrysler, Dodge, Jeep or Ram dealership.

### C. In A Foreign Country Outside Of North America:

If you are traveling temporarily outside of North America, and your vehicle remains registered in the United States:

- You should take your vehicle to an authorized Chrysler, Dodge, Jeep or Ram dealer. They should give you the same warranty service you receive in the United States.

- If the authorized dealership charges you for repairs which you feel should be covered under your warranty, please get a detailed receipt for the work done. Make sure that this receipt lists all warranty repairs and parts that were involved. (This receipt will be similar to the one used by the authorized dealer who normally services your vehicle.)

- When your vehicle returns to the United States, contact the FCA US Customer Assistance Center section 7.2 for reimbursement consideration. You will normally need to provide a copy of the receipt, your vehicle registration and any other relevant documents.

- Reimbursement will not be considered if the vehicle does not return to the United States.

19

**D. If You Move:**

If you move to another country, be sure to contact the FCA US Customer Assistance Center section 7.2 and the customs department of the destination country before you move. Vehicle importation rules vary considerably from country to country. You may be required to present documentation of your move to FCA US in order to continue your warranty coverage. You may also be required to obtain documentation from FCA US in order to register your vehicle in your new country.

**E. Notice:**

If your vehicle is registered outside of the United States, and you have not followed the procedure set out above, your vehicle will no longer be eligible for warranty coverage of any kind. (Vehicles registered to United States government officials or military personnel on assignment outside of the U.S. will continue to be covered.)

# 6.2 How To Get Roadside Assistance Service - U.S. Or Canada Only *

## A. Who Is Covered:

You are covered by the Roadside Assistance services if you are a purchaser for use of the vehicle. The Roadside Assistance services lasts for five years or 60,000 miles on the odometer, whichever occurs first, calculated from the start date of the Basic Limited Warranty, as set forth in Section 2.1 E.

* Towing services provided through Cross Country Motor Club, Inc., Medford, MA 02155, except in AK, CA, HI, OR, WI, and WY, where services are provided by Cross Country Motor Club of California, Inc., Medford, MA 02155.

## B. What To Do:

If your vehicle requires jump start assistance, out of gas/fuel delivery, tire service, lockout service or towing as a result of a mechanical breakdown, call 800-521-2779 for assistance.

Provide your name, vehicle identification number, license plate number, and your location, including the telephone number from which you are calling. Briefly describe the nature of the problem and answer a few simple questions.

You will be given the name of the service provider and an estimated time of arrival. If you feel you are in an "unsafe situation", please let us know. With your consent, we will contact local police or safety authorities.

## C. Covered Services:

**Flat Tire Service**

If you are inconvenienced by a flat tire, we will dispatch a service provider to use your vehicle's temporary spare tire (if equipped) as recommended in your Owner's Manual. This is not a permanent flat tire repair.

**Out of Gas/Fuel Delivery**

Drivers can't always count on a gas station being nearby - especially when traveling away from home. We will dispatch a service provider to deliver a small amount of fuel (maximum 2 gallons) to get you to a nearby station.

**Battery Jump Assistance**

No time is a good time for a dead battery, but with Roadside Assistance, you don't have to worry about being stranded. We will dispatch a service provider to provide you with a battery jump anytime, day or night.

22

**Lockout Service**

Whether the keys are locked in your vehicle or frozen locks are keeping you from getting on your way, Roadside Assistance can assist you. This service is limited to providing access to the vehicle's seating area. It does not cover the cost of replacement keys.

**Towing Service**

Our towing service gives you peace of mind and confidence. If your vehicle becomes disabled as a result of a mechanical breakdown, Roadside Assistance will dispatch towing service to transport your vehicle to the closest authorized Chrysler, Dodge, Jeep or Ram dealer. If you choose to go to another dealership, you will be responsible for the cost if the extra distance exceeds ten miles.

## D. If Unable To Contact Roadside Assistance:

If you are unable to contact Roadside Assistance and you obtain towing services on your own, you may submit your original receipts from the licensed towing or service facility, for services rendered within 30 days of the occurrence. Be sure to include your vehicle identification number, odometer mileage at the time of service and current mailing address. We will process the claim based on vehicle and service eligibility. If eligible, we will reimburse you for the reasonable amounts you actually paid, based on the usual and customary charges for that service in the area where they were provided FCA US's determination relating to reimbursement are final. Correspondence should be mailed to:

FCA US Towing Assistance
P.O. Box 9145
Medford, MA 02155
Attention: Claims Department

## 6.3 Emergency Warranty Repairs

If you have an emergency and have to get a warranty repair made by someone other than an authorized Chrysler, Dodge, Jeep or Ram dealer, follow the reimbursement procedure in 6.1 C.

## 6.4 Getting Service Under The Federal Emission Performance Warranties

### A. What To Do

If your vehicle has failed an emissions test described in 5.2:

- Take it to an authorized Chrysler, Dodge, Jeep or Ram dealer as soon as possible.

- Give the service representative the printout showing that your vehicle failed the test.

- If possible, bring all service receipts, maintenance logs, and records proving that your vehicle has been properly maintained, since you may be required to show them.

### B. Further Steps You Can Take, And How To Get More Information

If you think your authorized dealer has wrongly denied you emission-warranty coverage, follow the steps described in 7.1. FCA US will reply to you in writing within 30 days after receiving your complaint (or within the time limit required by local or state law). If the owner is not notified within 30 days that a performance warranty claim is denied, the manufacturer must repair the vehicle free of charge.

If you want more information about getting service under the Federal Emission Warranty or the Performance Warranty, or if you want to report what you think is a violation of these warranties, you can contact:

Manager, Certification and Compliance
Division Warranty Claims
Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Mail Code 6403J
Washington, D. C. 20460

# 7. How To Deal With Warranty Problems

## 7.1 Steps To Take

### A. In General

Normally, warranty problems can be resolved by your authorized dealer's sales or service departments. That's why you should always talk to your authorized dealer's service manager or sales manager first. But if you're not satisfied with your dealer's response to your problem, FCA US recommends that you do the following:

**Step 1:**

Discuss your problem with the owner or general manager of the authorized dealership.

**Step 2:**

If your authorized dealer still can't resolve the problem, contact the FCA US Customer Assistance Center: You'll find the address in section 7.2.

### B. What FCA US Will Do

Once you have followed the two steps described in 7.1 A, a FCA US representative at FCA US headquarters will review your situation. If it's something that FCA US can help you with, FCA US will provide an authorized dealer with all the information and assistance necessary to resolve the problem. Even if FCA US can't help you, FCA US will acknowledge your contact and explain FCA US's position.

## C. If Your Problem Still Isn't Resolved For Customers Residing In Arkansas, Idaho, Kentucky, Minnesota And Montana ONLY:

If you can't resolve your warranty problem after following the two steps described in 7.1 A, and you live in Arkansas, Idaho, Kentucky, Minnesota or Montana ONLY, you can contact the FCA US LLC Customer Arbitration Process in your area.

You may obtain a brochure describing FCA US LLC's Customer Arbitration Process, including an application, by calling 800-247-9753 for assistance.

This service is strictly voluntary, and you may submit your dispute directly to the Customer Arbitration Process (CAP) at no cost. The CAP is administered by an independent dispute settlement organization and may be contacted in writing at the following address:

National Center for Dispute Settlement

FCA US LLC
P.O. Box 727
Mt. Clemens, MI 48046

## HOW TO DEAL WITH WARRANTY PROBLEMS

The CAP reviews only vehicle disputes involving FCA US LLC ("FCA US") Limited Warranty or a FCA US/Mopar Part Limited Warranty. The CAP does not review disputes involving the sale of a new or used vehicle, personal injury/property damage claims, disputes relating to design of the vehicle or part, or disputes which are already the subject of litigation.

The CAP will need the following information from you:

1. Legible copies of all documents and repair orders relevant to your case,

2. Vehicle identification number of your vehicle,

3. A brief description of your unresolved concern,

4. The identity of your servicing/selling dealer,

5. The date(s) of repair(s) and mileage at the time,

6. Current mileage, and

7. A description of the action you expect to resolve your concern.

## HOW TO DEAL WITH WARRANTY PROBLEMS

Upon receipt of your request:

- The National Center for Dispute Settlement (NCDS) will acknowledge receipt of your request, by mail, within ten days, and advise you whether or not your dispute is within the jurisdiction of the Process.

- When your request is within jurisdiction NCDS will request FCA US and the dealer to present their side of the dispute. You will receive copies of their responses.

- While your dispute is pending NCDS or FCA US may contact you to see if your case can be settled by agreement. If a settlement is offered to you, FCA US will ask you to sign a form that contains that settlement. Your case will then be closed. There is no requirement for you to participate in this settlement process.

- If you requested an oral hearing, a decision-maker will contact you to arrange a convenient time and place for a hearing. Usually, this will be at a dealership near you.

- If you request a documents-only review, a NCDS panel will review and decide your case. Neither you, the dealer nor FCA US need be present.

- NCDS will send you a written Statement of Decision. This statement will include the decision, any action to be taken by the dealer or FCA US and the time by which the action must be taken. The decision will be binding on the dealer and FCA US but not on you unless you accept the decision.

- If any action is required on the part of the dealer or FCA US you will be contacted within ten days after the date by which the dealer or FCA US must act to determine whether performance has been rendered.

- The entire dispute settlement process will normally take no longer than 40 days.

- The CAP dispute settlement procedure does not take the place of any state or Federal legal remedies available to you. Whether or not you decide to submit your dispute to the Process, you are free to pursue other legal remedies.

## HOW TO DEAL WITH WARRANTY PROBLEMS

### D. Notice Under State Lemon Laws

Some states have laws allowing you to get a replacement vehicle or a refund of the vehicle's purchase price under certain circumstances. These laws vary from state to state. If your state law allows, FCA US requires that you first notify us in writing of any service difficulty that you may have experienced so that we can have a chance to make any needed repairs before you are eligible for remedies provided by these laws. In all other states, we ask that you give us written notice of any service difficulty. Send your written notice to the FCA US Customer Assistance Center at the address in 7.2.

## 7.2 Helpful Addresses And Telephone Numbers

Here are the addresses and telephone numbers of the FCA US Customer Assistance Center that can help you wherever you happen to be. Contact the one that covers your area:

- **In the United States:**

**FCA US Customer Assistance Center**

P.O. Box 21-8004

Auburn Hills, Michigan 48321-8004

Phone Number: 800-247-9753

**To contact FCA US by email,**

simply access the following website:

www.chrysler.com

(click on the "Contact Us" button)

27

28

## HOW TO DEAL WITH WARRANTY PROBLEMS

- **In Canada:**

  **FCA Canada Inc.**

  **Customer Service**

  Chrysler Centre

  P.O. Box 1621

  Windsor, Ontario N9A-4H6

  Phone Number (English): 800-465-2001

  Phone Number (French): 800-387-9983

- **In Mexico:**

  **Customer Relations Office**

  Prolongación Paseo de la Reforma 1240

  Santa Fe, Cuajimalpa CP 05348

  Ciudad de México

  Phone Number (in Mexico): 800-505-1300

  Phone Number (outside Mexico): +(52)55 50817568

- **In Puerto Rico and U.S. Virgin Islands:**

  **Customer Service**

  FCA Carribbean LLC

  Box 191857

  San Juan, Puerto Rico 00919-1857

  Phone Number: 800-247-9753

  Fax Number: (787) 782-3345

# 8. Optional Service Contract

Mopar Vehicle Protection plans offer valuable protection against repair costs when these warranties no longer apply. They complement but don't replace the warranty coverages outlined in this booklet. A variety of plans are available, covering various time-and-mileage periods and various groups of the vehicle's mechanical components.

Mopar Vehicle Protection plans are the ONLY vehicle extended protection plans authorized, endorsed and backed by FCA US LLC to provide additional protection beyond your vehicle's warranty. Look for our Brand logo and ask an authorized dealer for details.



A PRODUCT OF FCA US LLC

# 9. Maintenance

## 9.1 General Information

It's your responsibility to properly maintain and operate your new vehicle. Follow the instructions contained in the General and Scheduled Maintenance Service guidelines in your Owner's Manual. Regular, scheduled maintenance is essential to trouble-free operation. If there is a dispute between you and FCA US concerning your maintenance of your vehicle, FCA US will require you to provide proof that your vehicle was properly maintained.

For your convenience, FCA US has prepared a Maintenance Schedule with routine service intervals which is included in your Owner's Manual. Its essential to follow these required maintenance intervals for safe trouble-free operation.

## 9.2 Where To Go For Maintenance

FCA US recommends that you return to the authorized dealer from whom you bought your vehicle for all maintenance service both during and after the warranty periods. Although you can get warranty service from any authorized dealer who sells your particular make, returning to your selling authorized dealer will help ensure that all your service needs are met and that you're completely satisfied. The dealership technicians are specifically trained to proficiently perform maintenance and repair procedures on your vehicle.

Authorized Chrysler, Dodge, Jeep or Ram dealers will help ensure that all your service needs are met and that you're completely satisfied. FCA US strongly recommends you use genuine FCA US/MOPAR parts to maintain your vehicle.

NOTES

NOTES

Original Owner's Name

Street Address

City and State                                    Zip Code

Vehicle Identification Number

Warranty Start Date (In-Service Date)        Mileage at Delivery

Selling Dealer                                   Code

City                                             State

Second Owner's Name

Street Address

City and State                                    Zip Code

Date of Second Purchase        Mileage at Purchase

Third Owner's Name

Street Address

City and State                                    Zip Code

Date of Third Purchase          Mileage at Purchase

Warranty coverage applies to all vehicle owners. To protect you in the event of a recall or any questions concerning your warranty, please tell your dealer about any ownership or address change, and write the details here.



18GENC-026-AC
©2018 FCA US LLC. All Rights Reserved.
Chrysler is a registered trademark of FCA US LLC.



Third Edition
Printed in the U.S.A.