UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE OLGUIN JR., <br><br> Plaintiff, <br><br> v. <br><br> FCA US LLC, et al., <br><br> Defendants. | Case No.: 1:21-cv-1789 JLT CDB <br><br> ORDER DENYING DEFENDANT'S MOTION TO DISMISS <br><br> (Doc. 9) |

Jose Olguin asserts his Chrysler Pacifica was manufactured and/or distributed by FCA US LLC. Olguin contends the vehicle was defective and required multiple repairs. Olguin seeks to hold FCA liable under federal and state law, including the Magnuson-Moss Warranty Act, the Song-Beverly Consumer Warrant Act, and fraudulent inducement - concealment. (*See generally* Doc. 1.)

FCA seeks dismissal of the claim for fraudulent inducement pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing the facts alleged are insufficient and the claim is barred by the economic loss rule. (Doc. 9.) Olguin opposes dismissal of the claim. (Doc. 13.) The Court finds the matter suitable for decision without oral arguments, and no hearing date will be set pursuant to Local Rule 230(g). For the reasons set forth below, the motion to dismiss is **DENIED**.

**I.      Background and Allegations**

Olguin alleges that on December 21, 2018, his "predecessors in interest (deceased) entered into a warranty contract with Defendant FCA regarding a 2018 Chrysler Pacifica vehicle …, which was

1

manufactured and/or distributed by Defendant FCA."[1] (Doc. 1 at 3-4 ¶ 11.) Olguin asserts "[t]he warranty contained various warranties, including but not limited to the bumper-bumper warranty, powertrain warranty, [and] emission warranty." (*Id.* at 4, ¶ 12.)

Olguin asserts he "is a reasonable consumer who interacted with sales representatives, considered FCA's advertisement, and/or other marketing materials concerning the FCA Vehicles prior to purchasing the Subject Vehicle." (Doc. 1 at 8, ¶ 37.) Olguin alleges he used the purchased vehicle "primarily for family or household purposes." (*Id.* at 4, ¶ 13.) He asserts that "[d]effects and nonconformities to warranty manifested themselves within the applicable express warranty period, including but not limited to the Vehicle's transmission; engine; defects causing stalling, among other defects and non-conformities." (*Id.*, ¶ 15.) Specifically, Olguin alleges the vehicle was "manufactured with FCA's defective 9HP transmission and Powertrain Control Module. (*Id.* at 6-7, ¶ 31.)

According to Olguin, the vehicle required repairs on three occasions between 2019 and 2021. (Doc. 1 at 5, ¶¶ 18-21.) Specifically, he reports that in December 2019, "with approximately 13,766 miles on odometer, the Subject Vehicle was presented … due to various concerns including jerking." (*Id.*, ¶ 19.) In June 2020, the Vehicle was submitted for repairs "due to various concerns including jerking and acceleration issues," with approximately 22,480 miles on the odometer. (*Id.*, ¶ 20.) Finally, in January 2021, "with approximately 33,434 miles on the odometer," the Vehicle was submitted for repairs due to "ongoing jerking and acceleration issues." (*Id.*, ¶ 21.) Olguin asserts each time, "Defendant's authorized repair facility performed warranty repairs." (*Id.*, ¶¶ 19-21.) However, Olguin alleges he "continued to experience symptoms of the Subject Vehicle's defects despite Defendant's representations that the Subject Vehicle was repaired." (*Id.*, ¶ 22.)

Olguin asserts "FCA knew since prior to Plaintiff purchasing the Subject Vehicle, that the 2018 Chrysler Pacifica vehicles equipped with a 9HP transmission are defective along with the Powertrain Control Module (PCM), including Plaintiff's 2018 Chrysler Pacifica, contained one or more defect(s)

---

[1] In the opposition to the motion to dismiss, Olguin asserts that "[i]n fact, Plaintiff jointly entered into the warranty contract with his now deceased wife." (Doc. 13 at 6.) Notably, an embedded note in the document questions the accuracy of the footnote. (*See id.*) However, FCA also indicates a belief that the statement concerning a "predecessor in interest" was in error. (Doc. 9-1 at 5, n.1.) Accordingly, based upon the assertions of the parties in the motion and opposition, the Court will proceed with the assumption that Olguin was one of the purchasers of the vehicle.

to the transmission and/or PCM which may result in stalling, shutting off, and/or loss of power." (Doc. 1 at 7, ¶ 32.) He contends this "Stalling Defect" "is a safety concern because it severely affects the driver's ability to control the car's speed, acceleration, and deceleration." (*Id.*, ¶ 33.) According to Olguin, "FCA was well aware and knew that the PCM installed in the Vehicle was defective…." (*Id.*, ¶ 34.) He contends:

> FCA acquired its knowledge of the Stalling Defect prior to Plaintiff acquiring the Vehicle, through sources not available to consumers such as Plaintiff, including but not limited to pre-production and post-production testing data; early consumer complaints about the Stalling Defect made directly to FCA and its network of dealers; aggregate warranty data compiled from FCA's network of dealers; testing conducted by FCA in response to these complaints; as well as warranty repair and part replacements data received by FCA from FCA's network of dealers, amongst other sources of internal information.

(*Id.*, ¶ 35.) Olguin asserts FCA "concealed and failed to disclose the defective nature of the Vehicle and its Stalling Defect to its sales representatives and [Olguin] at the time of sale and thereafter." (*Id.* at 8, ¶ 36.) Olguin alleges he "would not have purchased the Subject Vehicle, or would have paid less for it, had [he] known of the Stalling Defect." (*Id.*, ¶ 51.)

Based upon the foregoing, Olguin filed a complaint in which he seeks to hold FCA liable for violations of the Song-Beverly Act, breach of the implied warranty of merchantability, violation of the Magnuson-Moss Warranty Act, and fraudulent inducement- concealment. (*See generally* Doc. 1 at 10-22.) In response, FCA filed the motion to dismiss on February 1, 2022. (Doc. 9.) Olguin filed his opposition to the motion on February 17, 2022 (Doc. 13), to which FCA filed a reply on February 24, 2022 (Doc. 15).

## II.      Motions to Dismiss

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In ruling on a motion to dismiss filed pursuant to Rule 12(b), the Court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) (citation, quotation marks omitted).

Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp.*

3

*Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Thus, under Rule 12(b)(6), "review is limited to the complaint alone."  *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

When considering a motion to dismiss, the Court must accept the factual allegations made in the complaint as true.  *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976).  The Supreme Court explained: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted).  A court must construe the pleading in the light most favorable to the plaintiffs, and resolve all doubts in favor of the plaintiffs. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  However, legal conclusions need not be taken as true when "cast in the form of factual allegations." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

"The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  The Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  To the extent the pleadings can be cured by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

**III.     Discussion and Analysis**

Fraudulent concealment and fraudulent omission claims are analytically synonymous.  *See Sloan v. Gen. Motors LLC*, 2020 WL 1955643, at \*23 n.16 (N.D. Cal. Apr. 23, 2020) (comparing tests for fraudulent omission and fraudulent concealment).  "Under California law, a claim of fraud by

omission requires a showing of (1) the concealment or suppression of material fact, (2) a duty to disclose the fact to the plaintiff, (3) intentional concealment with intent to defraud, (4) justifiable reliance, and (5) resulting damages." *Lewis v. Google LLC*, 851 F. App'x 723, 725 (9th Cir. 2021) (internal quotation marks, citation omitted).

FCA asserts the ninth claim for relief for fraudulent inducement- concealment fails for the following reasons: (1) Olguin failed to allege the fraud sufficiently to comply with the heightened pleadings requirements of Rule 9; (2) Olguin does not allege FCA had a duty to disclose; and (3) the economic loss rule bars the claim. (Doc. 9-1 at 8-17.)

### A.     Compliance with Rule 9

Claims that are "grounded in fraud" are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which requires a plaintiff to state, "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Thus, under Rule 9, "[m]ere conclusory allegations of fraud are insufficient." *Moore v. Kayport Package Express, Inc*., 885 F.2d 531, 540 (9th Cir. 1989). A plaintiff's factual allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, to satisfy the heightened pleading standard, a party must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020) (quoting *Davidson v. Kimberly-Clark*, 889 F.3d 956, 964 (9th Cir. 2018)).

Claims under California law for fraudulent concealment and omission sound in fraud and "must be pleaded with particularity under Rule 9(b)." *Kearns*, 567 F.3d at 1127 (citing *Engalla v. Permanente Med. Group, Inc*., 15 Cal. 4th 951, 974 (Cal. 1997)); *see also Stewart v. Electrolux Home Prods.,* 304 F. Supp. 3d 894, 906 (E.D. Cal. 2018) ("even concealment or omission claims… must be pled with particularity"); *Scherer v. FCA US*, 565 F.Supp.3d 1184, 1189 (C.D. Cal. 2021) ("fraud by omission claims must meet Rule 9(b)'s particularity requirements"). However, because a claim for fraudulent omission involves "a failure to act instead of an affirmative act," courts in the Ninth Circuit have

determined "fraudulent omission claims 'can succeed without the same level of specificity required by a normal fraud claim.'" *Goldstein v. GM LLC*, 517 F.Supp.3d 1076, 1086 (S.D. Cal 2021) (quoting *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007); *Miller v. Ford Motor Co.*, 2022 WL 3229503, at *13 (E.D. Cal. Aug. 10, 2022) ("claims based on an omission can succeed without the same level of specificity required by a normal fraud claim").

FCA argues Olguin fails to satisfy the requirements of Rule 9 because he "fails to plead the omission with particularity." (Doc. 9-1 at 9.) FCA contends Olguin "merely describes alleged performance problems with the vehicle and [this] does not amount to identifying the defect that FCA failed allegedly to disclose." (*Id.* at 9-10.) FCA observes that Olguin "pleads no facts identifying what materials he reviewed, when he reviewed them, the content of the materials or who provided them …." (*Id.* at 13.) On the other hand, Olguin argues his "fraud by omission claim is well pled." (Doc. 13 at 8, emphasis omitted.)

In the complaint, Olguin alleges his vehicle has a "Stalling Defect," which "is a safety concern because it severely affects the driver's ability to control the car's speed, acceleration, and deceleration." (Doc. 1 at 7, ¶ 33.) Olguin contends "these conditions make it difficult to safely merge into traffic or may cause a sudden loss of power while in motion" and "can cause the vehicle to fail without warning, while the Vehicle is moving at highway speeds." (*Id.*) Olguin asserts that "FCA committed fraud by allowing the Subject Vehicle to be sold to Plaintiff without disclosing that the Subject Vehicle and its transmission (and PCM) was defective and susceptible to loss of power while driving at highway speeds, stalling, loss of control, and other impairments to driveability." (*Id.* at 21, ¶ 113.) Olguin contends that prior to his acquisition of the vehicle, "FCA was well aware and knew that the transmission installed in the Vehicle was defective but failed to disclose this fact to Plaintiff at the time of sale and thereafter." (*Id.* at 17-18, ¶ 93; *see also id.* at 7, ¶ 34.) According to Olguin,

> FCA acquired its knowledge of the Stalling Defect prior to Plaintiff acquiring the Vehicle, through sources not available to consumers such as Plaintiff, including but not limited to pre-production and post-production testing data; early consumer complaints about the Stalling Defect made directly to FCA and its network of dealers; aggregate warranty data compiled from FCA's network of dealers; testing conducted by FCA in response to these complaints; as well as warranty repair and part replacements data received by FCA from FCA's network of dealers, amongst other sources of internal information.

(*Id.* at 18, ¶ 94; *see also id.* at 21-22, ¶ 115(a).)  Olguin alleges he would not have purchased the vehicle if he had been aware of the Stalling Defect.  (*Id.* at 8, ¶ 37; *id.* at 22, ¶ 118.)  Further, he asserts that he suffered actual damages and "unknowingly exposed himself to the risk of liability, accident and injury as a result of Defendant's fraudulent concealment of the Stalling Defect." (*Id.* at 13, ¶ 67; *id.* at 22-23, ¶ 120.)

Courts in the Ninth Circuit have reviewed similar allegations concerning vehicle defects—including transmission and stalling defects—and concluded the allegations were sufficient to satisfy the pleading requirements of Rule 9.  *See, e.g., Sherer v. FCA US*, 565 F. Supp. 3d 1184, 1190-91 (S.D. Cal. 2021); *Asghari v. Volkswagen Group of Am.*, 42 F.Supp.3d 1306, 1326-27 (C.D. Cal. 2013); *Edwards v. FCA US LLC*, 2022 WL 1814144, at *2-7 (N.D. Cal. June 2, 2022); *Lewis v. Ford Motor Company*, 2023 WL 1823760, at *3 (E.D. Cal. Feb. 8, 2023).  For example, in *Sherer*, the plaintiffs also raised a claim for fraud by omission related to a 2018 Chrysler Pacifica manufactured by FCA.  *See id.*, 565 F.Supp.3d at 1187.  FCA sought judgment on the pleadings, asserting the claim was not sufficiently plead under Rule 9.  *Id.* at 1189.  The Southern District court observed:

> Looking at the SAC, it states, "[the Defendant] committed fraud by allowing the Subject Vehicle to be sold to Plaintiff without disclosing that the Subject Vehicle and its transmission and PCM was defective which can cause loss of engine timing and result in shutting off or stalling without warning." (SAC ¶ 51.) Although this allegation does not detail the granular defect within the transmission and PCM units, the Court finds that by identifying the transmission and PCM as the defects and describing the performance problems, (*see id.* ¶¶ 11-17), the SAC provides enough particularity to detail the circumstances of the alleged defects.

*Id.* at 1190.  In addition, the court noted the Sherers also alleged they were "reasonable consumer[s] who interacted with Defendant's sales representatives and reviewed materials disseminated by Defendant concerning Defendant's Vehicles prior to purchasing the Subject Vehicle." *Id.* at 1191. The court determined this "sufficiently alleged reliance with particularity because it demonstrates if Defendant disclosed the information to the sales representatives, then Plaintiffs would have received the information from the sales representative and would have not purchased the vehicle." *Id.*  The court observed the Sherers also alleged they had an "interaction with Defendant's sales representative," who did not reveal the defect.  *Id.*  In light of these allegations, the Southern District concluded the allegations were sufficient under Rule 9 and denied FCA's motion for judgment on the pleadings.  *Id.*

Similarly, this Court recently reviewed a plaintiff's claim for fraud by omission related to a "stalling defect" in *Lewis v. Ford Motor Company*. *Id.*, 2023 WL 1823760 (E.D. Cal. Feb. 8, 2023). Lewis sought to hold Ford Motor Company liable for "fraudulent inducement- concealment," and Ford sought dismissal on the grounds that "the Complaint does not plead fraud with particularity as required by Rule 9(b)." *Id.* at *2. The Court noted Lewis alleged Ford "committed fraud by selling Plaintiff the vehicle without disclosing that the 'transmission was defective and susceptible to sudden and premature failure.'" *Id.* Lewis asserted Ford knew the transmission "was defective but failed to disclose this fact to Plaintiffs at the time of sale and thereafter." *Id.* Lewis also alleged Ford knew, or should have known, the transmission defect could cause "hesitation upon acceleration, harsh shifting, delay upon shifting, slamming into gear, and transmission failure ... [which] present a safety hazard and are unreasonably dangerous to consumers because they can suddenly and unexpectedly affect the driver's ability to control the vehicle's speed, acceleration, deceleration and/or overall responsiveness of the vehicle in various driving conditions." *Id.* Lewis asserted he would not have purchased the vehicle if he had known of the transmission defect and suffered actual damages as a result. *Id.* Furthermore, Lewis alleged he "was unknowingly exposed to the risk of liability, accident, or injury to third parties because of Defendant's fraudulent conduct." *Id.* Based upon these allegations, the Court found:

> Plaintiff alleges the "who" (Ford Motor Company), "what" (concealing material facts regarding the vehicle's defective transmission), "when" (at the time of sale and thereafter), "where" (at FMC's authorized dealership and repair facilities), and "how" (knowing of the defect based on production testing data, early consumer complaints made directly to FMC and its network of dealers, aggregate warranty data compiled from FMC's network of dealers, testing conducted by FMC, as well as warranty repair and part replacements data received by FMC from FMC's network of dealers and breaching its duty to disclose by concealing a defect that posed an unreasonable safety risk).

*Id.* at *3. The Court concluded the allegations "sufficiently support[] Plaintiff's claim for fraud by omission in accordance with Rule 9(b)'s heightened pleading standard by stating the claim with enough particularity to allow Defendant to defend against the claim." *Id.* (citing *Sherer*, 565 F. Supp. 3d. at 1190). Thus, the Court denied the motion to dismiss the claim for fraudulent inducement- concealment. *Id.*, at *3, *4.

Significantly, the allegations now before the Court are nearly identical to those addressed in

*Lewis.* As noted above, Olguin alleges FCA concealed the defective transmission and PCM of the vehicle "at the time of purchase, repair, and thereafter." (Doc. 1 at 9, ¶ 42; *id.* at 17-18, ¶ 93; *id.* at 21, ¶ 113.) In addition, Olguin asserts the defect was not disclosed at FCA's dealership or by the authorized repair facilities. (*Id.* at 5, ¶ 22; *id.* at 9, ¶ 43.) Instead, Olguin contends the "FCA dealers either inform consumers that their vehicles are functioning properly or conduct repairs that merely mask the defect." (*Id.* at 9, ¶ 43.) Further, Olguin alleges—like Lewis—that FCA knew of the defect from production testing data, consumer complaints, aggregate warranty data, testing and "warranty repair and part replacements data received by FCA from FCA's network of dealers." (*Id.* at 7, ¶ 35.) Accordingly, the Court finds Olguin adequately alleged the "who, what, when, where, and how" of the omission to comply with Rule 9(b). *See* Moore, 966 F.3d at 1019; *Lewis*, 2023 WL 1823760 at *3.

**B.  Duty to disclose**

FCA also argues Olguin "fails to plead that FCA US was under a duty to disclose any alleged and unspecified defect to the general public." (Doc. 9-1 at 11.) FCA argues that "[e]ven if FCA US had the purported knowledge of the alleged PCM defect at the time of sale (FCA US denies any such defect or knowledge thereof), the duty to disclose arises only in specific circumstances." (*Id.*)

Olguin contends "the Stalling Defect is a material fact," which "gives rise to a duty to disclose." (Doc. 13 at 9 [emphasis omitted], citing *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 596 (C.D. Cal. 2008) (citing *Falk v. GM Corp.*, 496 F. Supp. 2d 1088, 1094-95 (N.D. Cal. 2007).) He asserts that "the operative Complaint alleges the materiality of the Stalling Defect on at least two different bases: it is (1) a safety concern and (2) a material problem affecting the core function of the Vehicle that arose during the warranty period." (*Id.* at 11.)

The Ninth Circuit determined an unreasonable safety hazard must be disclosed by the manufacturer under California law. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (collecting cases); *see also Hastings v. Ford Motor Company*, 2020 WL 12688367, at *3 (S.D. Cal. Oct. 2, 2020) ["manufacturers hold a duty to disclose an unreasonable safety risk in a product" under California law]); *Lewis*, 2023 WL 1823760 at *3 (citing both *Wilson* and *Hastings* and holding "a manufacturer has the duty to disclose any unreasonable safety hazard"). "[A]n unreasonable safety hazard exists as long as there is a sufficient causal connection between the uncorrected condition and

the ability to safely operate a vehicle." *Sharma v. BMW of N. Am.*, 2016 WL 4395470, at *9 (N.D. Cal. Aug. 18, 2016); *see also Elias v. Hewlett-Packard Co*., 950 F. Supp. 2d 1123, 1136 (N.D. Cal. 2013) (to establish a duty to disclose based on a safety issue, a plaintiff must allege "an instance of physical injury or a safety concern as well as a 'sufficient nexus' between the alleged defect and the safety issue"). For example, "a headlamp flickering or going out at night or in inclement weather could put the car's driver in danger," and as a result the alleged defective headlamp was an "unreasonable safety hazard." *Mui Ho v. Toyota Motor Corp*., 931 F. Supp. 2d 987, 997 (N.D. Cal. 2013).

Olguin alleges "the Stalling Defect is a safety concern because it severely affects the driver's ability to control the car's speed, acceleration, and deceleration." (Doc. 1 at 7, ¶ 33.) According to Olguin, "these conditions make it difficult to safely merge into traffic or may cause a sudden loss of power while in motion," including the transmission and PCM defect causing "the vehicle to fail without warning[] while… moving at highway speeds." (*Id.*; *see also id.* at 17, ¶ 92.) Significantly, the potential loss of power while driving—and thus the "potential loss of control of the vehicle"— due to alleged transmission and PCM defect presents a safety risk to drivers, which is an unreasonable safety risk. *See Mui Ho*, 931 F. Supp. 2d at 997. As a result, Olguin alleged facts sufficient to support a conclusion that FCA had a duty to disclose, given this unreasonable safety risk, under California law. *Lewis*, 2023 WL 1823760 at *3 (finding the "[d]efendant had a duty to disclose" where the plaintiff "alleged both that the transmission defect presented a safety risk (loss of control of the vehicle), and the safety risk was unreasonably dangerous to consumers").

**C.     Economic Loss Rule**

Pursuant to the economic loss rule, a party to a contract cannot recover a "purely economic loss" for a tort, "unless he can demonstrate harm above and beyond a broken contractual promise." *Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1191 (9th Cir. 2021); *see also S.M. Wilson & Co. v. Smith Int'l, Inc.,* 587 F.2d 1363, 1376 (9th Cir. 1978). In other words, "the economic loss rule prevent[s] the law of contract and the law of tort from dissolving one into the other." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (Cal. 2004) (internal quotation marks, citation omitted). The California Supreme Court held an exception to the economic loss rule applies when "the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both

intentional and intended to harm." *Robinson Helicopter Co.*, 34 Cal. 4th at 990 (quoting *Erlich v. Menezes*, 21 Cal. 4th 543, 552 (1999)).

Significantly, courts have determined that "fraudulent inducement is an exception to the economic loss rule." *Lewis,* 2023 WL 1823760 at *4 (citing, *e.g.*, *Robinson Helicopter Co.*, 34 Cal. 4th at 989-90; *Dhital v. Nissan North Am., Inc.*, 84 Cal. App. 5th 828, 843 (2022) ["we conclude that, under California law, the economic loss rule does not bar plaintiffs' claim here for fraudulent inducement by concealment"]; *Kroutilin v. FCA US, LLC*, 2022 WL 18278602, at *5 (C.D. Cal. Dec. 7, 2022) ["[B]ased on the existing persuasive authority, the court finds that Plaintiff's sixth cause of action for fraudulent inducement — concealment is not barred by the economic loss rule."]); *see also Sherer*, 56 F.Supp.3d at 1193 (finding the claim for fraud by omission "is not barred by the economic loss rule" and denying the motion for judgment on the pleadings on those grounds); *Flier v. FCA US LLC*, 2022 WL 16823042, at *6-7 (N.D. Cal. Nov. 8, 2022) (declining to apply the economic loss rule to the claim for fraudulent omission, after noting "a California Court of Appeal held that the economic loss rule does not bar fraudulent omission claims"). Based upon the recent holdings of the Fifth District Court of Appeal in *Dhital* and district court cases—including the Eastern District in *Lewis*—the Court finds the economic loss rule does not bar Olguin's claim for fraudulent inducement.[2]

**IV.     Conclusion and Order**

For the reasons set forth above, the Court **ORDERS**:  Defendant's motion to dismiss (Doc. 9) is **DENIED**.

IT IS SO ORDERED.

Dated:    **February 13, 2023**

UNITED STATES DISTRICT JUDGE

---

[2] In so finding, the Court acknowledges that the Ninth Circuit recently certified a question to the California Supreme Court, asking the state court to clarify whether "claims for fraudulent concealment" are "exempted from the economic loss rule." *Rattagan v. Uber Technologies, Inc*., 19 F.4th 1188, 1193 (9th Cir. 2021).  The California Supreme Court granted the Ninth Circuit's request for certification, and the matter remains pending. *See Rattagan v. Uber Technologies*, Case No. S272113 (Cal.).

11