# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE OLGUIN JR., <br><br> Plaintiff, <br><br> v. <br><br> FCA US LLC, et al., <br><br> Defendants. | Case No.: 1:21-cv-1789 JLT CDB <br><br> ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEY FEES, COSTS, AND EXPENSES <br> (Doc. 53) <br><br> ORDER TERMINATING THE BILL OF COSTS AS MOOT <br> (DOC. 51) |

Jose Olguin asserted in this action that his Chrysler Pacifica—which was manufactured and/or distributed by FCA US LLC—was defective and required multiple repairs. He sought to hold FCA liable for violations of the Song-Beverly Act, breach of the implied warranty of merchantability, violation of the Magnuson-Moss Warranty Act, and fraudulent inducement- concealment. (Doc. 1.) The parties settled the underlying claims, and Olguin now seeks an award of attorney fees and costs. (Doc. 53.) For the reasons set forth below, the motion is **GRANTED** in part, in the modified amount of $35,374.50.

## I.    Background and Allegations

Olguin alleges that he and his deceased wife "entered into a warranty contract with Defendant FCA regarding a 2018 Chrysler Pacifica vehicle …, which was manufactured and/or distributed by Defendant FCA." (Doc. 1 at 3-4 ¶ 11; *see also* Doc. 13 at 6.) Olguin asserts "[t]he warranty contained various warranties, including but not limited to the bumper-bumper warranty, powertrain warranty,

1

[and] emission warranty." (*Id.* at 4, ¶ 12.)

Olguin asserts that he "is a reasonable consumer who interacted with sales representatives, considered FCA's advertisement, and/or other marketing materials concerning the FCA Vehicles prior to purchasing the [Chrysler Pacifica]." (Doc. 1 at 8, ¶ 37.) Olguin alleges he used the purchased vehicle "primarily for family or household purposes." (*Id.* at 4, ¶ 13.) He asserts that "[d]efects and nonconformities to warranty manifested themselves within the applicable express warranty period, including but not limited to the Vehicle's transmission; engine; defects causing stalling, among other defects and non-conformities." (*Id.*, ¶ 16.) Specifically, Olguin alleges the vehicle was "manufactured with FCA's defective 9HP transmission and Powertrain Control Module. (*Id.* at 6-7, ¶ 31.)

According to Olguin, his vehicle required repairs on three occasions between 2019 and 2021. (Doc. 1 at 5, ¶¶ 18-21.) Specifically, he reports that in December 2019, "with approximately 13,766 miles on odometer, the Subject Vehicle was presented … due to various concerns including jerking." (*Id.*, ¶ 19.) In June 2020, the vehicle was submitted for repairs "due to various concerns including jerking and acceleration issues," with approximately 22,480 miles on the odometer. (*Id.*, ¶ 20.) Finally, in January 2021, "with approximately 33,434 miles on the odometer," the vehicle was submitted for repairs due to "ongoing jerking and acceleration issues." (*Id.*, ¶ 21.) Olguin asserts each time, "Defendant's authorized repair facility performed warranty repairs." (*Id.*, ¶¶ 19-21.) However, Olguin alleges he "continued to experience symptoms of the Subject Vehicle's defects despite Defendant's representations that the Subject Vehicle was repaired." (*Id.*, ¶ 22.)

Olguin asserts FCA knew, prior to his purchase of the vehicle, that "2018 Chrysler Pacifica vehicles equipped with a 9HP transmission are defective along with the Powertrain Control Module (PCM), including Plaintiff's 2018 Chrysler Pacifica, contained one or more defect(s) to the transmission and/or PCM which may result in stalling, shutting off, and/or loss of power." (Doc. 1 at 7, ¶ 32.) He contends this "Stalling Defect" "is a safety concern because it severely affects the driver's ability to control the car's speed, acceleration, and deceleration." (*Id.*, ¶ 33.) According to Olguin, "FCA was well aware and knew that the PCM installed in the Vehicle was defective…." (*Id.*, ¶ 34.) He alleges:

> FCA acquired its knowledge of the Stalling Defect prior to Plaintiff acquiring the Vehicle, through sources not available to consumers such

>as Plaintiff, including but not limited to pre-production and post-production testing data; early consumer complaints about the Stalling Defect made directly to FCA and its network of dealers; aggregate warranty data compiled from FCA's network of dealers; testing conducted by FCA in response to these complaints; as well as warranty repair and part replacements data received by FCA from FCA's network of dealers, amongst other sources of internal information.

(*Id.*, ¶ 35.) Olguin asserts FCA "concealed and failed to disclose the defective nature of the Vehicle and its Stalling Defect to its sales representatives and [Olguin] at the time of sale and thereafter." (*Id.* at 8, ¶ 36.) Olguin alleges that he "would not have purchased the Subject Vehicle, or would have paid less for it, had [he] known of the Stalling Defect." (*Id.*, ¶ 41.)

Based upon the foregoing, Olguin filed a complaint in which he sought to hold FCA liable for violations of the Song-Beverly Act, breach of the implied warranty of merchantability, violation of the Magnuson-Moss Warranty Act, and fraudulent inducement- concealment. (*See* Doc. 1 at 10-22.) Olguin's prayer for relief included, but was not limited to: general, special, actual and punitive damages; "[r]evocation of acceptance of the Subject Vehicle, rescission, reimbursement and/or restitution of all monies expended;" diminution in value; civil penalties totaling twice the actual damages; and attorneys' fees, costs, and expenses. (*Id.* at 23.)

Olguin notified the Court that he "accepted Defendant FCA US LLC's Offer of Judgment Pursuant to Fed. R. Civ. P. 68 in the amount of $121,889.04." (Doc. 45 at 2.) The Court entered judgment and closed the case on January 4, 2024. (Doc. 46.) Pursuant to the terms of the executed "Offer of Judgment," the parties agreed that if they were "unable to resolve attorney's fees and costs, Plaintiff may seek reasonable costs, expenses and attorneys' fees pursuant to a properly noticed motion…" (Doc. 45 at 5, ¶ 3.)

The parties also stipulated to several extensions of time to file a motion for attorneys' fees and costs, which the Court approved. (Docs. 47, 48, 49, and 50.) On June 3, 2024, Olguin filed the pending motion, seeking fees and costs pursuant to the Song- Beverly Consumer Warranty Act, the Magnuson-Moss Warranty Act, and California Civil Code § 1794(d). (Doc. 53.) Based upon a stipulation of the parties, the Court continued the deadline for FCA to file any opposition. (Doc. 57.) After the parties filed a second stipulation to further extend the deadline, the Court ordered FCA to file any opposition by July 15, 2024, and informed the parties: "[a]bsent a much more detailed, compelling

3

showing of good cause, no further extensions will be granted." (Doc. 59 at 1-2.) FCA did not file any opposition, and the time to do so has expired. Thus, the motion remains unopposed.

## **II.      Awards for Fees, Costs, and Expenses**

The Magnuson-Moss Warranty Act and Song-Beverly Act provide that a prevailing consumer / buyer may be awarded attorneys' fees, costs and expenses related to a civil action. 15 U.S.C. § 2310(d); Cal. Civ. Code § 1794(d). Specifically, the Magnuson-Moss Act states a prevailing consumer:

> may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate.

15 U.S.C. § 2310(d)(2). Likewise, California's Song-Beverly Act provides that buyers who prevail in an action "shall be allowed by the court to recover … costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code § 1794(d).

When the parties are unable to "settle the amount of a fee," as here, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. at 424, 437 (1983). Thus, the burden of proof is on fee applicants to show a fee is reasonable. *Id.*; *see also Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). In general, "[t]he starting point for determining a reasonable fee is the 'lodestar' figure, which is the number of hours reasonably expended multiplied by a reasonable hourly rate." *Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992); *see also Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008); *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 489 (2016) (a lodestar involves "multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate").

Courts are given discretion when calculating a fee award. *Hensley*, 416 U.S. at 437. However, the Supreme Court explained "it remains important ... for the district court to provide a concise but clear explanation of its reasons for the fee award." *Id.* Thus, the Court should provide sufficient information on how it arrived at the total of compensable hours for which fees were awarded to allow

for meaningful appellate review. *Cunningham v. County of Los Angeles*, 879 F.2d 481, 485 (9th Cir. 1988) ("Courts need not attempt to portray the discretionary analyses that leads to their numerical conclusions as elaborate mathematical equations, but they must provide sufficient insight into their exercises of discretion to enable [the appellate court] to discharge our reviewing function").

### III.     Request for Judicial Notice

Olguin requests the Court take judicial notice of 19 orders issued by various courts in California. (Doc. 53-3 at 2-5.) In addition, he requests judicial notice of the "Declaration of Bryan Kemnitzer in support of Plaintiff Susan Soderstrom's Motion for Attorneys' fees, costs, and expenses," which was filed in San Francisco County Superior Court, Case No. CGC15544475. (*Id.*; *see also* Doc. 53-2 at 75-87.)

The Court may take judicial notice of a fact that "is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Toward this end, the Court may take judicial notice of documents filed and issued in other courts. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Significantly, "the authenticity and existence of a particular order, motion, pleading or judicial proceeding, which is a matter of public record, is judicially noticeable." *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004); *see also Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 857 n.1 (9th Cir. 2008) (taking judicial notice of a court order "because it is a matter of public record"); *Lane v. Vitek Real Estate Indus. Grp.*, 713 F. Supp. 2d 1092, 1097 (E.D. Cal. 2010). In addition, to the extent a declaration identifies fees awarded in other cases, such information is subject to judicial notice "because the awards are easily verified on the courts' dockets." *See S.L. v. Upland Unified Sch. Dist.*, 2015 U.S. App. LEXIS 18756, at *6 (9th Cir. May 7, 2015). However, the court may not take judicial notice of other facts in a declaration. *Id.*

Significantly, a majority of the cases identified by counsel are from forums outside the Eastern District, including: state courts in San Francisco County, Los Angeles County, Alameda County; and federal courts in the Northern, Central, and Southern Districts of California. (*See* Doc. 53-3 at 2-5.) As discussed below, the Court must determine whether the hourly rates requested are reasonable for

the local forum.  Thus, the fees and hourly rates awarded in outside forums are not relevant to the Court's determination, and the Court declines to take judicial notice of the decisions issued by other federal and state courts outside of the Eastern District.  For this reason, the Court also declines to take judicial notice of the declaration filed by Mr. Kemnitzer in San Francisco County Superior Court.

On the other hand, counsel identified three orders issued by state courts in counties within the Eastern District:

> 1.  An order in *Flores v. FCA US, LLC* (Sacramento County Superior Court, Case No. 34-2016-00192221-CU-BC-GDS) issued on July 28, 2020, which is attached as Exhibit 7 to the Declaration of Payam Shahian.
>
> 2.  An order in *Miranda v. FCA* (Sacramento County Superior Court, Civil Case No. 34-2020-00276881-CU-BC-GDS), issued on February 4, 2022, which is attached as Exhibit 14 to the Declaration of Payam Shahian.
>
> 3.  A minute order issued in *Mario Badillo et al. v. FCA US, LLC, et al.* (San Joaquin County Superior Court, Case No. STK-CV-UBC-2021-0001660) on November 3, 2023, which is attached as Exhibit 20 to the Declaration of Payam Shahian.

(Doc. 53-3 at 3-4, ¶¶ 7, 14, 20.)  Because hourly rates approved as reasonable in these counties are relevant to the Court's analysis— and the orders are subject to judicial notice—the Court grants the request for judicial notice as to these three exhibits only.  *See Reusser*, 525 F.3d at 857 n.1; *Southern Cal. Edison Co.*, 300 F. Supp. 2d at 974.

## IV.     Discussion and Analysis

It is undisputed that Olguin qualifies as a prevailing consumer under the Magnuson-Moss Warranty Act and a prevailing buyer under the Song-Beverly Act.  As such, he is entitled to an award of fees and csots.  Indeed, pursuant to the Rule 68 offer, Olguin "may seek reasonable costs, expenses and attorneys' fees ..."  (Doc. 45 at 5, ¶ 3.)  Thus, the Court must determine whether the requested fees and costs are reasonable.

### A.     Requested fees

Olguin seeks fees in the amount of $43,535.00 for Strategic Legal Practices, APC, plus "an additional $3,500.00 for Plaintiff's counsel to review Defendant's Opposition, draft the Reply, and attend the hearing on this Motion."  (Doc. 53 at 2.)  Olguin also requests a 1.35 multiplier, which would enhance the lodestar by $15,237.25.

1.     Hours expended

A fee applicant must provide records documenting the tasks completed and the amount of time spent. *Hensley*, 461 U.S. at 424 (1983); *see also Ketchum v. Moses*, 24 Cal.4th 1122, 1132 (2001) (party must provide records sufficient for the court to "carefully review ... [the] hours expended" to determine whether the time reported was reasonable). In determining an appropriate fee award, "the district court should exclude hours that are excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (internal quotation marks, citation omitted). In general, however, "the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno*, 534 F.3d at 1112.

According to the billing records, lawyers and professional staff at SLP worked a total of 82.00 hours on the action. (Doc. 53-2 at 235-236.) The time includes tasks including—but not limited to—drafting the complaint, responding to FCA's motion to dismiss, discovery, conferences and correspondence with Olguin and opposing counsel, reviewing the Rule 68 offer, and drafting the pending motion. (*Id.*) Review of the provided firm records does not reveal any overbilling or inflated hours. Further, clerical tasks were not included in the lodestar calculation. Because the lawyers and professional staff spent a reasonable amount of time on the tasks identified, no deductions are required from the hours expended.

As noted above, counsel request the Court award "an additional $3,500.00 for Plaintiff's counsel to review Defendant's Opposition, draft the Reply, and attend the hearing on this Motion." (Doc. 53 at 2.) Because the motion remains unopposed and the Court vacated the hearing (Doc. 54), counsel was not required to complete the anticipated tasks. Therefore, the Court declines to add the requested $3,500 to the lodestar calculation.

2.     Hourly rates

The Court must also determine whether the hourly rates are reasonable to calculate the lodestar. *Florida v. Dunne*, 915 F.2d 542, 545 n.3 (9th Cir. 1990). The Supreme Court explained that attorney's fees are to be calculated with "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). In general, the "relevant community" for purposes of determining the prevailing market rate is the "forum in which the district court sits." *Camacho v.*

*Bridgeport Fin., Inc*., 523 F.3d 973, 979 (9th Cir. 2008).  Thus, when a case is filed in the Eastern District of California, this district "is the appropriate forum to establish the lodestar hourly rate…." *See Jadwin v. County of Kern*, 767 F. Supp. 2d 1069, 1129 (E.D. Cal. 2011).

Fee applicants bear the burden to establish that the requested rates are commensurate "with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11.  Applicants meet this burden by producing "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.*; *see also Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110-11 (9th Cir. 2014) ("Affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community ... are satisfactory evidence of the prevailing market rate.").  The Court may apply "rates from outside the forum ... 'if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.'" *Barjon v. Dalton*, 132 F.3d 496 (9th Cir. 1997) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)). Because Olguin does not report that local counsel was unavailable, the Court must determine whether the hourly rates applied by attorneys and staff at SLP align with those in the Eastern District.

                *a.*      *Experience of counsel and staff*

Payam Shahian, the managing partner of SLP, provided information regarding the experience of the individuals who worked on the action in his declaration in support of the fees request.  (*See* Doc. 53-2 at 15-23, ¶¶ 47-68.)  Tionna Carvalho was admitted to the bar in 2014, and became a partner at the firm in 2022.  (*Id.* at 16-17, ¶¶ 52-53.)  Mr. Shahian reports that Ms. Carvalho "successfully argued dozens of summary judgment motion[s]" and went to trial on many lemon law actions.  (*Id.* at 17, ¶ 52.) Ivy Choderker was admitted to practice in 2000, but Mr. Shahian does not provide any information concerning her skills or professional reputation.  (*Id.* at 16, ¶¶ 50-51.)  Elizabeth Larocque began practicing law in 2002, and focuses on lemon law litigation.  (*Id.* at 19, ¶ 58.)  Karin Kuemerie was admitted to the bar in 2003, and has focused her career on civil litigation, including experience prior to joining SLP in "construction defect litigation, insurance subrogation actions, workers' compensation

8

specialty defense, and employment law defense." (*Id.* at 18, ¶ 56.)  Gregory Yu started practicing law in 2004, and began his career "representing national insurance companies," followed by a period at a firm "specializing in wage-and-hour law." (*Id.* at 21, ¶ 64.)  Mr. Yu started working of counsel to SLP in 2011, generally with "individual and class action consumer matters." (*Id.*)  Anna Weiser was admitted to the bar in 2010, and practiced for about 13 years prior to working on this action.  (*Id.* at 20, ¶ 62; *see also id.* at 237.)  Zavig Mkrdech previously worked as a law clerk at the Los Angeles District Attorney's office, and after passing the bar in 2022, began focusing "on consumer protection matters related to the Song-Beverly Consumer Warranty Act." (*Id.* at 22, ¶ 66.)  Ariel Harman-Holmes and Ezra Ryu both were admitted to the California bar in 2017, and had practiced law between 4 and 6 years when they worked on the action.  (*Id.* at 18-20, ¶¶ 54, 60; *see also id.* at 237.)  Dhara Patel graduated law school in 2020, and has worked as a provisionally licensed attorney since that time.  (*Id.* at 23, ¶ 68.)  Hector Calderon is a law clerk, but there is no information provided related to his professional experience.  (*Id.* at 15, ¶ 48.)

                b.        *Rates applied by counsel*

The firm of SLP requests hourly rates ranging from $385 to $595 for attorneys, $285 for the law clerk, and $350 for the provisionally licensed attorney.  (Doc. 53-2 at 237.)  Mr. Shahian asserts that "based on [his] own experience and review of relevant court orders in Central and Northern California, as well as across the State," he believes the hourly rates requested are "reasonable and … the prevailing rates in the community." (*Id.* at 15, ¶ 47.)  In support of this assertion, Mr. Shahian refers to many cases in which the courts approved the requested hourly rates either for SLP attorneys or individuals with "similar experience." (*See id.* at 15-23, ¶¶ 49-69.)  However, the majority of the cases identified occurred in federal and state courts within the Central and Northern Districts of California.  (*See id.*)  These cases offer the Court no assistance in determining the reasonableness of the rates for the proper local forum: the Eastern District.  Thus, the Court addresses only the few cases cited within the Eastern District, including: *Zakskorn v. Am. Honda Motor Co.*, 2015 WL 3622990, at *12 (E.D. Cal. June 9, 2015); *Flores v. FCA US, LLC*, Sacramento Super. Ct., Case No. 34-2016-00192221-CU-BC-GDS (July 28, 2020 Order) [Doc. 53-2 at 92-99]; *Miranda v. FCA*, Sacramento Super. Ct., Civil Case No. 34-2020-00276881-CU-BC-GDS (Feb. 4, 2022 Order) [Doc. 53-2 at 158-162]).

Although Mr. Shahian does not seek fees in this action, he asserts that in *Zakskorn*, "Judge Mueller in 2015 approved [his] requested rate of $595/hr," suggesting it is an appropriate rate for other attorneys at SLP. (Doc. 53-2 at 4, ¶ 7.) *Zakskorn* was a class action in which the Court was required to review the terms of the proposed settlement, including the reasonableness of the requested fees for the several firms who worked on the action. *Id.*, 2015 WL 3622990, at *12-15. SLP requested the hourly rates of $595 for Mr. Shanian, $550 for senior counsel, and $325 for an associate. *Id.* at *12. Addressing the reasonableness of the hourly rates requested by all the firms who worked on the action —all based outside the Eastern District—the Court determined "the hourly rates submitted by senior counsel in particular are significantly more than the prevailing Eastern District rate." *Id.* at *14. The Court observed that "class counsel … recognized as much through application of the inverse multiplier of .75 in addition to [a] 10 percent fee reduction." *Id.* Moreover, the Court "calculated an adjusted lodestar" using hourly rates aligned with the local forum to determine whether the proposed lodestar was reasonable. *Id*. at *15. Upon doing so, the Court determined: "While the individual billing rates for partners may be higher than the prevailing rates in the Eastern District, the inverse multiplier, lower rates for associates, and the voluntary 10 percent haircut render the figure reasonable and consistent with awards in this district." *Id.* Given the voluntary lodestar reductions, the Court did not adopt the rate of $595, but found the adjusted lodestar was reasonable. Significantly, with an inverse multiplier of .75 and an additional 10% reduction, the hourly rate of $595 was reduced to approximately $402.

In support of the rates requested, counsel also attached a minute order issued in *Badillo v. FCA US, LLC,* San Joaquin Superior Court Case No. STK-CV-UBC-2021-0001660. (Doc. 53-3 at 4; Doc. 53-2 at 208-209.) In *Badillo*, the plaintiff accepted a "statutory offer of compromise," which "included attorney's fees and costs." (Doc. 53-2 at 208.) The court found the fees requested were "based on a reasonable attorney rate of $450/hour," and approved the unopposed request for fees. (*Id.*) However, the court did not identify any information regarding the experience of the attorneys, their skills, or reputation in the community. Thus, while the approved rate of $450 is clearly within the range of fees awarded within the Eastern District, the limited findings do not assist this Court in evaluating the reasonableness of the rates now requested by counsel, who have a wide range of experience and were admitted to practice between 2 and 23 years when they worked on this case. (*See* Doc. 53-2 at 237.)

10

1    Counsel also cite *Flores* and *Miranda*, from Sacramento County Superior Court, to support the
2 hourly rates requested. (Doc. 53-2 at 92-99; 158-162.) In *Miranda*, the state court offered little
3 analysis to support its conclusion that "the requested hourly rates are reasonable." (*See id.* at 160-161.)
4 The *Miranda* court observed the SLP requested fees ranging from $285 to $550, which counsel asserted
5 were "appropriate given the relative experience and qualifications of these attorneys and are similar to
6 the rates awarded by Sacramento Superior Court, the U.S. District Courts for the Northern District of
7 California, and courts throughout California." (*Id.* [citation omitted].) The court found "similar fees to
8 those requested have been awarded previously in lemon law cases," and accepted the hourly rates. (*Id.*)
9 The court did not identify the admission dates or experience of counsel, or otherwise explain how it
10 reached the conclusion that the rates were reasonable. Thus, the *Miranda* decision also offers little
11 assistance to this Court.

12    In *Flores*, counsel from SLP requested hourly rates ranging from $325 to $460 for attorneys
13 who were admitted to practice between two and eleven years. (Doc. 53-2 at 95.) The court observed:
14 "Plaintiff's counsel has attached a number of prior court orders to demonstrate their hourly rates are
15 reasonable." (*Id.*) The court "surveyed the prior orders and declarations submitted with the moving
16 papers," and found "the requested hourly rates are reasonable for this type of case, in this community,
17 for attorneys of similar skill and experience." (*Id.*) However, the state court did not identify the
18 forums of the reviewed cases, or provide any analysis to explain the conclusion that the hourly rates
19 were reasonable. (*See id.* at 95-96.) Thus, the analysis in *Flores* offers little support to show the rates
20 are reasonable.

21            c.    *Adjustments to rates for counsel*

22    Notably, after both *Miranda* and *Flores*, the Sacramento County Superior Court reviewed a
23 motion for fees brought by SLP in a lemon law case and found many decisions cited by SLP from other
24 forums—including courts in San Francisco, Los Angeles; Alameda; San Diego, and the United States
25 District Courts for the Northern, Central, and Southern Districts—were "irrelevant to the merits of [the]
26 motion." *Lewis v. Hyundai Motor Am.*, 2023 Cal. Super. LEXIS 5145 (Jan. 27, 2023). The court
27 observed that SLP identified "*one* Sacramento superior court [that] concluded in 2020 … [the] hourly
28 rates for SLP attorneys from $325 to $460 were reasonable" and another case approving the rates of

$425 and $450 for Tionna Dolin. *See id.* at *20-21 (emphasis in original); *see also Flores* (approving the hourly rates of $325 to $460 [Doc. 53-2 at 95-96]) and *Miranda* (approving the rates identified for Ms. Carvalho, née Dolin [Doc. 53-2 at 160-161]). The *Lewis* court observed that SLP "conveniently [made] no effort to cite to cases out of the … Eastern District of California," where hourly rates are generally "lower than those awarded by other district courts in the state." *Id.* (citations omitted). After considering "the rulings on similar motions out of other departments ... [and the] Eastern District, and the Court's own knowledge and experience with awarding fees in this court in similar contexts," the court concluded the hourly rates sought by SLP were "slightly high" and declined to award the rates requested. *Lewis*, 2023 Cal. Super. LEXIS 5145 at *22. The court reduced the hourly rate for Gregory Yu from $595 to $500. *Id.* at *19, 23. The rates for attorneys admitted to practice between 2010 and 2013 were reduced to $400, and the rates for attorneys admitted between 2014 and 2018 were reduced to $350. *Id.* at *19-20, 23.[1] The rates for attorneys admitted to practice between one and three years before working on *Lewis* were reduced to $300. *Id.* at *20, 23. Finally, the requested rate for a law clerk at SLP was reduced from $325 to $150. *Id.* Thus, the court rejected the rates previously accepted by Sacramento County Superior Court with little analysis in *Flores* and *Miranda*, and reduced the rates to align with the local forum.

This Court has also performed a comprehensive survey of fees awarded in the Eastern District, and finds the current hourly rates range from $200 to $750, with rates exceeding $600 reserved for attorneys who have practiced approximately 30 years. *See, e.g., Owen v. Hyundai Motor Am.*, 2024 U.S. Dist. LEXIS 154674, at *10-11 (E.D. Cal. Aug. 27, 2024) (collecting cases, and finding hourly rates in cases arising under the Song-Beverly Act range from $200 to approximately $600); *Cianchetta*, 2022 WL 2160556, at *6 (reducing the hourly rate for attorneys in their first year of practice to $200); *Davis v. Mercedes-Benz USA, LLC*, 2022 WL 16529527, at *2 (E.D. Cal. Oct. 27, 2022) (reducing the rate in a lemon law action to $250 for attorneys who practiced law for less than five years); *Siafarikas*, 2022 WL 16926265, at *3 (approving the rate of $250 for an attorney "who has practiced law for three years" and $500 for an attorney who practiced law for 21 years); *Aoki v.*

---

[1] In reducing the rate for Ms. Dolin, the Court awarded $350 for her time as an associate, but increased the hourly rate to $450 for time in 2022, after she became a partner at the firm. *Lewis*, 2023 Cal. Super. LEXIS 5145 at *23.

*Gilbert*, 2022 WL 956949, at *2 (E.D. Cal. May 29, 2022) (observing the Court found "$450 an hour [was] a reasonable rate for an attorney with fifteen years of experience" [citation omitted]); *Garybo v. Leonardo Bros*, 2021 WL 449350, at *5 (E.D. Cal. Sept. 30, 2021) (adopting the hourly rate of $500 for attorneys admitted to practice for 20 years); *Mostajo v. Nationwide Mut. Ins. Co.*, 2023 WL 2918657, at *11 (E.D. Cal. Apr. 12, 2023) (approving of "hourly rates ranging from $650 through $750" for "attorneys with over thirty years of experience" for purposes of calculating a lodestar). With these parameters in mind, the hourly rates for counsel must be modified to align with rates in the Eastern District.

The hourly rates for Ivy Choderker and Elizabeth Larocque, who have practiced law for more than 20 years, are adjusted to $525. The time for Gregory Yu and Karen Kuemerle—who practiced law between 18 and 19 years when they worked on this action—will be calculated at the rate of $500. The rate for Anna Weiser, who practiced law for approximately 13 years before working on the case, is adjusted to $450. The time worked by Tionna Carvalho, who was admitted to practice in 2014, is adjusted to $400 per hour to align with her 7-10 years of experience when working on this matter, while recognizing the fact she became a partner at SLP during the pendency of this action. The hourly rate for Ariel Harman-Holmes, who practiced law for about 6 years, is adjusted to $300; and the rate for Ezra Ryu, who practiced law for about 4 years, is adjusted to $275. Finally, the rate for Zavig Mkrdech, who has been admitted to practice for approximately 2 years, is adjusted to $250.

### d. Rate for provisionally licensed lawyer

Counsel requests the hourly rate of $350 for Dhara Patel, who graduated from law school in 2020 and "is a provisionally licensed attorney" working at SLP. (Doc. 53-2 at 23, ¶ 68.) California's "Provisional Licensure Program" was implemented for law school graduates in the class of 2020, and permits eligible graduates to practice as "provisionally licensed lawyers" under the supervision of a licensed attorney.[2] To become fully licensed, an individual must pass the bar exam and meet the other requirements for admission to the bar. Although the program was originally to end on June 1, 2022,

---

[2] The information contained on the California State Bar website is subject to judicial notice. *See White v. Martel*, 601 F.3d 882, 885 (9th Cir. 2010). Accordingly, the Court takes judicial notice of the information concerning the provisional licenses available on the state bar website. *See Provisional Licensed Lawyers*, The State Bar of California, https://www.calbar.ca.gov/Admissions/Special-Admissions/Provisionally-Licensed-Lawyers (last visited Aug. 29, 2024).

the California Supreme Court extended the program. Individuals who satisfied all program requirements but have not yet passed the bar exam received an extension to December 31, 2025. Because Ms. Patel continues to have "provisionally licensed" status, it appears she satisfied program requirements but has not yet passed the bar exam.

Significantly, counsel did not identify any cases in the local forum that address the hourly rates for provisionally licensed lawyers such as Ms. Patel. Upon review of awarded hourly rates in this forum—including those awarded for law clerks; certified law clerks; and new, fully licensed attorneys—the Court finds the hourly rate of $200 is appropriate. This rate acknowledges Ms. Patel satisfied the requirements of the state bar to receive her "provisionally licensed" status, as well as her several years of experience prior to performing work in this action.

e. *Rate for SLP's law clerk*

Counsel request the rate of $325 for Hector Calderon, a law clerk at SLP. (Doc. 53-2 at 237.) Significantly, this rate is also higher than the prevailing market rate for law clerks in the Eastern District. *See, e.g., Mohamed v. Barr*, 562 F.Supp.3d 1128, 1135 (E.D. Cal. 2022) (awarding the hourly rate of $125 for law clerks); *Welch v. Housing Auth. of the Cnty. of Sacramento*, 2023 WL 3794293, at *2-3 (E.D. Cal. June 1, 2023) (approving $150 per hour for a law clerk as "reasonable and commensurate with the prevailing rate in the community"). In support of the lodestar calculated by counsel, Mr. Shahian only identifies Mr. Calderon as a law clerk and does not provide any other information regarding his education, skills, or professional experience. (*See id.* at 15, ¶¶ 48-49.) Given the dearth of information regarding Mr. Calderon, the Court is unable to find a higher hourly rate for law clerks is appropriate. Accordingly, the hourly rate for Mr. Calderon is adjusted to $125.

3. Lodestar calculation

Based upon the survey of fees awarded recently in the Eastern District and the Court's own knowledge, these adjusted rates are reasonable and align with prevailing local market rates. *See Cianchetta*, 2022 WL 2160556, at *6; *Garybo*, 2021 WL 449350, at *5; *see also Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (concluding "the district court did not abuse its discretion either by relying, in part, on its own knowledge and experience" to determine reasonable hourly rates). With the hourly rates set forth above, the adjusted lodestar totals $34,972.50:

|  | Time | Rate | Lodestar |
|---|---|---|---|
| Hector Calderon | 2.0 | $125 | $250.00 |
| Ivy Choderker | 6.7 | $525 | $3,517.50 |
| Tionna Carvalho | 5.7 | $400 | $2,280.00 |
| Ariel Harman-Holmes | 8.2 | $300 | $2,460.00 |
| Karin Kuemerie | 10.0 | $500 | $5,000.00 |
| Elizabeth Larocque | 5.7 | $525 | $2,992.50 |
| Zavig Mkrdech | 7.2 | $250 | $1,800.00 |
| Dhara Patel | 1.2 | $200 | $240.00 |
| Ezra Ryu | 4.3 | $275 | $1,182.50 |
| Anna Weiser | 5.0 | $450 | $2,250.00 |
| Greg Yu | 26.0 | $500 | $13,000.00 |
| **Total** |  |  | **$34,972.50** |

This adjusted lodestar is considered presumptively reasonable. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

### 4. Application of a multiplier

Once a court calculates the lodestar, it may "adjust the lodestar upward or downward by using a multiplier," but only the "rare" or "exceptional" case justifies an upward adjustment. *Van Gerwen*, 214 F.3d at 1045. In evaluating a request to adjust the lodestar, the Court considers: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." *Mo. Rahman v. Us LLC*, 594 F. Supp. 3d 1199, 1207 (C.D. Cal. 2022) (quoting *Ketchum v. Moses*, 24 Cal.4th 1122, 1132 (2001)). Any use of a multiplier must be "supported both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen*, 214 F.3d at 1045 (internal quotation marks, citations omitted.)

In requesting the application of a 1.35 multiplier, counsel do not assert this case presented novel or difficult questions of law or fact. (*See* Doc. 53 at 18-19.) Indeed, "the issues in lemon law litigation are not complex and do not require a significant amount of legal analysis or novel pleading." *See Steel v. General Motors Co.*, 912 F. Supp. 724, 746 (N.J. Dist. 1995). Further, counsel report a limited amount of time discovery and it does not appear facts were significantly disputed. (*See* Doc. 53-2 at 235-236; *see also* Doc. 53-4 at 4-5, Carvalho Decl. ¶¶ 11, 15-16, 19-25.) Counsel also do not

15

demonstrate significant skills were needed to pursue Olguin's claims. There is no evidence this action precluded the attorneys from working other cases. To the contrary, the attorneys and professional staff at SLP who worked on this action—10 individuals in total—expended approximately 70 hours of work on this action over the course of two years, from the filing of the complaint through the acceptance of the Rule 68 offer. (*See* Doc. 53-2 at 235-236.) Finally, the contingent nature of the fee award is outweighed by the other factors, particularly in this action where it appears the issues to be resolved were minimal.[3] Accordingly, the Court finds the lodestar amount of $34,972.50 is reasonable and declines to award the requested multiplier.

### B. Expenses and costs[4]

In general, an award of costs in the federal district court is governed by Federal Rule of Civil Procedure 54(d) and not applicable state law. *See Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2003) (citing *In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1120 n. 2 (9th Cir. 1987)). Rule 54 provides that costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). This "creates a presumption in favor of awarding costs to the prevailing party, but the district court may refuse to award costs within its discretion." *Champion Produce*, 342 F.3d at 1022. "[A] district court need not give affirmative reasons for awarding costs; instead, it need only find that the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003). For example, costs may be declined in light of "a losing party's limited financial resources" or if there was "misconduct by the prevailing party." *Champion Produce*, 342 F.3d at 1022.

The Supreme Court explained that 28 U.S.C. § 1920 "defines the term 'costs' as used in Rule 54(d)." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987). Costs that may be taxed under 28 U.S.C. § 1920 include:

> (1) Fees of the clerk and marshal;

---

[3] Moreover, the Song-Beverly Act "is a mandatory fee-shifting statute which eliminates any uncertainty about whether costs will be awarded to the prevailing party." *Rahman v. FCA US LLC*, 594 F. Supp. 3d 1199, 1206 (C.D. Cal. 2022).

[4] The Court notes that Olguin seeks costs under Civ. Code § 1794(d). However, the Court has original jurisdiction over this matter due to the claim arising under the Magnuson-Moss Warranty Act, and is not sitting with diversity jurisdiction. Even if the Court were exercising diversity jurisdiction, it must apply federal procedural law, including an award of fees. *See Feldman v. Allstate Ins. Co.,* 322 F.3d 660, 666 (9th Cir. 2003) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). As such, the Court applies federal law in evaluating the request.

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Generally, the court may not award costs under Rule 54(d) that are not authorized by statute or court rule. *Arlington Cent. School Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 301 (2006).  Thus, "costs almost always amount to less than the successful litigant's total expenses in connection with a lawsuit." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012) (citation omitted).

With the motion, Olguin also seeks an award of $1,039.66 for costs.[5]  (Doc. 53 at 19; Doc. 53-2 at 236-237.)  The costs requested include: the Court's filing fee ($402.00) a private mediation fee ($275.00), FedEx expenses for mailing documents to Olguin ($158.16), and payments "to First Legal for eFiling" various documents ($204.50).  (Doc. 53-2 at 236-237.)  Importantly, mediation costs cannot be taxed, and this amount must be deducted.  Likewise, "[c]ommunication charges like courier [and] mail... costs cannot be taxed" under Section 1920.  *Nat'l Union Fire Ins. Co. v. Allied Prop. & Cas. Ins. Co.*, 2014 WL 3529980 at *1 (E.D. Cal. July 16, 2014) (citing *El-Fadl v. Central Bank of Jordan*, 163 F.R.D. 389, 390 (D.D.C.1995)).  Finally, the private e-filing costs may not be taxed, and are not reasonable given that counsel may have e-filed the documents without such costs.  *See Owen*, 2024 U.S. Dist. LEXIS 154674 at *28-29 (declining SLP's request for costs for the e-filing performed by First Legal).  With these nontaxable deductions, the Court approves the request for costs in the modified amount of $402.00.

## V. Conclusion and Order

Based upon the foregoing, the Court **ORDERS**:

1. Plaintiff's motion for fees is **GRANTED** in the modified amount of $34,972.50.

---

[5] The same day as this motion was filed, Olguin filed a "Bill of Costs," requesting the total of $1,039.66.  (Doc. 51 at 1.)  Given that the Court now addresses the motion, the Bill of Costs will be deemed moot.

17

2. Plaintiff's motion for costs is **GRANTED** in the modified amount of $402.00.

3. Plaintiff's Bill of Costs (Doc. 51) is terminated as **MOOT**.

IT IS SO ORDERED.

Dated:   **August 30, 2024**

UNITED STATES DISTRICT JUDGE